**Robert A. ESTY and Esty and Associates, Inc., Appellants,**

v.

**BEAL BANK S.S.B. and CSG Investments, Appellees.**

No. 05–08–00038–CV.

Court of Appeals of Texas, Dallas.

Aug. 18, 2009.

J. Michael Tibbals, Kerri Knox, Snell Wylie & Tibbals, Dallas, TX, for Appellants.

Stacy R. Obenhaus, Joe B. Harrison, William G. Whitehill, James C. Scott, Gardere, Wynne, Sewell, L.L.P., Dean Fuller, Dallas, TX, for Appellees.

Before Justices RICHTER, LANG, and MURPHY.

## OPINION

Opinion By Justice RICHTER.

This summary judgment appeal arises from a failed effort to secure a loan to purchase assets in a bankruptcy proceeding. Robert Esty, individually, and Esty and Associates, Inc. ("EAI") (together, "Esty") appeal the trial court's summary judgment in favor of Beal Bank, S.S.B. and CSG Investments, Inc. ("CSG") (together, "Beal"). In four broad issues, each encapsulating multiple sub-issues, Esty contends the trial court abused its discretion by: (1) making several additional rulings on the summary judgment evidence six months after the interlocutory judgment and two months after the entry of a final judgment; (2) granting the motions for summary judgment; (3) striking Esty's response to the summary judgment motions, appendix

and fifth amended petition pursuant to the local rules; and (4) striking Esty's fourth and fifth amended petitions and the affidavit of one of his experts for non-compliance with the scheduling order. We conclude Esty waived any complaint about the timeliness of the trial court's post-judgment orders, which were signed within the trial court's plenary jurisdiction. Striking the expert affidavit and the fourth amended petition was not error, but striking the summary judgment response and appendix constituted an abuse of discretion. Although the trial court abused its discretion in striking the fifth amended petition and the summary judgment response and appendix, the error probably did not lead to the rendition of an improper judgment or prevent the appellant from presenting his case on appeal. As for the summary judgment, our discussion below leads us to conclude that the trial court did not err because Esty did not raise any genuine issues of material fact to defeat summary judgment on his claims for breach of contract, DTPA, fraud, negligent misrepresentation, promissory estoppel, ratification, and fraudulent inducement. Consequently, we affirm the trial court's judgment.

## Background

### 1. Factual Background

Esty ran an investment banking business through his company EAI. In 2003, Esty raised $5.5 million dollars for a transaction with Corban Communications, Inc. ("Corban") whereby companies owned by Esty purchased sixty-three telecommunications towers from Corban and then leased the towers back to Corban. In March 2004, Corban defaulted on the lease payments and filed for protection under Chapter 11 of the Bankruptcy Code. The bankruptcy court initially set a date of May 20, 2004 to auction Corban's assets, but the date was subsequently changed to May 24.

Esty wanted to salvage his investment by purchasing Corban's assets at the bankruptcy auction. An entity or individual seeking to become a qualified purchaser at the Corban bankruptcy sale was required to post a $2 million dollar earnest money deposit. When no bidders qualified, Corban proposed that Esty deposit $450,000 to be used as earnest money for a debtor in possession ("DIP") loan. Esty obtained a $500,000 home equity loan to fund the bankruptcy deposit. Esty then purchased a majority interest in International Communications Group ("ICG"), a company to be used as a vehicle to bid on the Corban assets.

Esty was referred to Beal as a potential source for a loan to ICG. Esty met with Beal representatives Kenny Springfield ("Springfield") and Todd Bicknell ("Bicknell") to discuss the loan. Esty initially planned to request a $2.5 million dollar DIP loan, but Springfield informed him that Beal's minimum was $10 million dollars and a loan of the size Esty planned to request would be too small. Springfield told Esty that Beal would be interested in a term loan to acquire the company if Esty would subordinate his equity ownership in the communications towers as his contribution to the financing. Following these discussions, Esty decided to request a $10 million dollar asset purchase loan collateralized by the assets he planned to purchase. Esty informed Beal that ICG would require a commitment letter by the time of the May 24 auction, and was assured Beal was cognizant of the fact that time was of the essence.

Esty alleges that Springfield and Bicknell convinced him that Beal had experience in DIP, reorganization, and asset purchase financing. Esty further alleges Springfield later assured him that the loan

application and attendant due diligence would be expedited. Springfield told Esty the loan had to be approved by the executive loan committee but did not mention that the application required the approval of the bank's CEO before it would be submitted to the loan committee.

Esty completed a loan application on April 27. Esty was told the loan was scheduled for submission to the executive loan committee on May 7 and the bank required an appraisal of Corban's assets. To this end, Esty paid Beal $50,000 as an initial expense deposit to purchase an appraisal. On May 6, Beal informed Esty that in order to obtain executive loan committee approval, a new application, a $150,000 work fee, and a personal guaranty were required. The loan was removed from the May 7 loan committee agenda, but Esty was not informed. On May 10, Esty was informed that the executive loan committee had reviewed his application and was ready to move forward but needed a new guaranty. On May 12, Beal presented another loan application. Esty executed the application on behalf of ICG and wired the $150,000 work fee to Beal. The May 12, 2004 loan application requested the lesser of either $10 million dollars or 50% of the lender approved orderly liquidation value of the collateral.

The $150,000 work fee was assessed to compensate Beal for expediting the due diligence, which in turn would enable Beal to make a timely determination about whether to issue the commitment letter. In this regard, the application stated:

> In consideration for Beal's work to provide the commitment letter on a timely basis as described herein, a fee of $150,000 ... is due and payable ... Beal agrees to use its best efforts to carry out the necessary due diligence and request the necessary approvals for

the loan to enable Beal to issue the commitment letter by May 21, 2004.

The loan application further provided that Beal would promptly notify ICG in writing if it determined that it was unwilling or unable to issue the commitment letter. The loan application stated it was irrevocable for a period of seven days following its execution. In bold type, just above the signature line, the application also stated:

> Neither Beal's acceptance of this Application for Loan, acceptance of an Expense Deposit, or discussions concerning the requested Loan obligates Beal to issue a commitment letter, nor make a loan on these terms or any other terms and conditions.

Even if Beal decided to issue a commitment letter, the application stated that Beal could terminate the commitment letter with no obligation to provide financing unless ICG satisfied, in Beal's sole discretion, specifically enumerated conditions precedent to funding as well as any other conditions imposed by the executive loan committee. The specified conditions included: (1) appraisal reports on the collateral showing an appraised value acceptable to Beal; (2) surveys, title policies, environmental, engineering, and property condition reports on the collateral acceptable to Beal in its sole discretion; (3) physical condition of the collateral acceptable to Beal; and (4) such third-party consents, estoppels, and other agreements as required by Beal.

Accuval Associates, Inc. performed the appraisal (the "Accuval Appraisal"), but it was not completed prior to May 21. Although Beal reviewed preliminary data from the Accuval Appraisal, it did not review the final version before May 21.

For a loan of the size requested, Beal's approval process had three steps. First, the loan officer had to recommend approv-

al. Second, Andrew Beal, the CEO, had to approve the loan. And finally, the loan had to be approved by the executive loan committee.

There is no question that the loan officer recommended approval of the loan. Beal's internal documents reflect that a loan committee profile (detailing the loan) was submitted or prepared for submission to the executive loan committee on May 7. The bank's documents also reflect that the executive loan committee approved the loan on May 7 and that Beal's counsel prepared a draft commitment letter on May 17. However, Beal maintains the loan was removed from the May 7 executive loan committee agenda and was not approved. Esty was not informed that consideration of the loan had been removed from the May 7 meeting. Then, on May 21, the CEO rejected the loan request. As a result, the application was not submitted to the executive loan committee.

In the early afternoon of May 21, Springfield telephoned Esty. The parties dispute what was said during that initial conversation, but it is not material to our determination. The parties agree, however, that later the same day Springfield told Esty and ICG's counsel that the application had been rejected. Written confirmation of this rejection was transmitted to ICG by facsimile on May 25, 2004. Beal subsequently refunded $82,504 to Esty.

ICG attended the May 24 bankruptcy auction and submitted the highest bid. With no financing in place at the time, ICG was unable to close on the asset purchase. ICG subsequently obtained financing from another lender, submitted a successful bid at a second auction conducted on July 16, 2004, and consummated the purchase of Corban's assets on July 26, 2004. Approximately one year later, ICG filed bankruptcy. By order of the bankruptcy court, ICG's claims were assigned to Esty &

Associates, Inc. (the "Bankruptcy Assignment"). Specifically, the Bankruptcy Assignment provides:

[A]ll causes of action owned by International Communications Group, Inc. and Corban Towers, Inc. against Beal Bank and CSG Investments, Inc. in connection with the loan commitment made by Beal Bank in 2004 to enable ICG to acquire assets from Corban communications, Inc. be and are hereby sold, transferred and assigned to Esty & Associates, Inc.

## 2. PROCEDURAL BACKGROUND

Esty initiated an action against Beal and CSG asserting claims for breach of contract, breach of fiduciary duty, fraud and fraudulent inducement, negligent misrepresentation, conversion, negligence and gross negligence, promissory estoppel and ratification, conspiracy, economic duress, unjust enrichment, and violation of the Texas Deceptive Trade Practices Act ("DTPA"). The trial court signed an agreed level three scheduling order setting the case for trial on September 24, 2007. The order provided that a party seeking affirmative relief was to designate experts and provide reports 105 days before the initial trial setting, and the party opposing affirmative relief was to do the same 90 days before the initial trial setting.

Beal filed two motions for summary judgment on April 20, 2007. The first motion asserted Beal was entitled to a summary judgment disposing of Esty's reliance damages claims and the second motion argued Beal was entitled to summary judgment on Esty's benefit of the bargain claims. Neither motion specified whether Beal was moving for a no-evidence summary judgment or a traditional summary judgment, and both motions can be construed to raise no-evidence and traditional summary judgment points. Esty moved for an extension of time to modify the

discovery deadlines. The trial court granted the requested relief in part and signed an order extending the time for all expert discovery for two weeks from the date of the order, including both parties' time to designate experts and provide reports.

On June 29, 2007, Beal filed a supplement to its motions for summary judgment. Esty responded to Beal's motions on July 16, 2007 and argued the summary judgment evidence established genuine issues of material fact with respect to Esty's claims for breach of contract, negligent misrepresentation, violation of the DTPA, promissory estoppel, ratification, and breach of fiduciary duty. The response included an appendix of summary judgment evidence consisting of the affidavit of Robert Esty with attachments ("Esty Affidavit"); the affidavit of Gary Durham ("Durham Affidavit"), an expert retained by Esty to testify concerning Esty's alleged damages; the affidavit of Charles Williams ("Williams Affidavit"), a banking expert; and the expert affidavit of Andrew Bogdanoff ("Bogdanoff Affidavit"), the principal of Remington Financial Group, Inc., an investment banking firm. An expert report was attached to the Williams Affidavit, but there was no report attached to the Bogdanoff Affidavit or the Durham Affidavit. The appendix also included numerous deposition excerpts, volumes of documents presumably produced during discovery, the Accuval Appraisal, and a valuation report prepared by DH Capital (the "DH Capital Report"). On the same day the response was filed, Esty also filed his fifth amended petition. The parties agree that a fourth amended petition was filed on the same day, but the record reflects otherwise. Although the certifi-

cate of service on the fourth amended petition reflects a service date of July 16, the file stamp reflects that the petition was filed on July 18.[1] The amended petitions do not include any additional causes of action.

On July 19, 2007, Beal filed objections to the summary judgment evidence and motions to strike. Esty responded to the objections on July 23, 2007, the day the court heard the motions for summary judgment. Both parties agreed the court need not hear the objections to the summary judgment at that time. Specifically, the parties stated:

> *Counsel for Beal:* There are motions to strike, responses, a variety of what I call ancillary issues to the main thing ... I'm willing to waive oral argument on any of these motions, let you simply enter a collection of orders that disposes of the entire summary judgment motion in whatever way you deem appropriate as well as any ancillary motions because some of them may not need to be ruled on depending on how you go on the summary judgment.
>
> *Counsel for Esty:* And I agree with that, Your Honor. In fact, I think [in] one of our papers we stated that we don't think any of the objections on either side should take up the time we need to do in addressing the substance.

On July 24, 2007, the trial court signed an interlocutory order granting Beal's motions for summary judgment. The order does not specify the basis for the court's decision. The order states, in pertinent part:

> The court has reviewed Defendants' summary judgment motions, plaintiffs' response, defendants' reply, the admissi-

---

1. The record also contains an additional response to the motion for summary judgment that bears a file stamp date of July 18.

ble competent summary judgment evidence in the motions and response ... The court finds that Defendants' summary judgment motions should be GRANTED.

■ On October 16, 2007, the trial court signed a final judgment. The judgment contains a Mother Hubbard clause.[2] On October 25, 2007, Esty filed a response to Beal's objections to the summary judgment evidence and motion to strike, and also filed a motion for reconsideration and for new trial. On December 6, 2007, the trial court signed an order denying Esty's motion for new trial. On December 17, 2007, Esty filed a notice of appeal.

The court conducted a hearing on the objections to the summary judgment evidence and motion to strike on December 17, 2007. There is no reporter's record of the hearing. On December 18, 2007, the court signed an Order which states in pertinent part:

This court is of the opinion that it may not rule on any objections at this point in time as to the form of the affidavits, as these are properly heard at or near the time the court rules on the summary judgment motions. However, **if there is any question regarding what I did or did not consider, this court would advise the parties that at the time of the summary judgment motion, I considered only the competent summary judgment evidence and did not consider any inadmissible evidence, including, but not limited to hearsay, hearsay upon hearsay, statements that lacked personal knowledge, statements that lacked foundation, and/or unreliable speculative opinions.**

Moreover, Plaintiffs' Response to Defendants' Summary Judgment Motions, Appendix, and Fifth Amended Petition were struck due to Plaintiffs' failure to comply with local rule 2.05, and in addition Plaintiffs' Fourth and Fifth Amended Petitions were struck as they were neither timely filed in accordance with the Court's scheduling Order nor did Plaintiffs seek leave to amend....

(Emphasis added). Then, on December 26, 2007, the trial judge signed an "Order on Defendants' Objections to Plaintiffs' Summary Judgment Evidence." The order sustains Beal's objections to specific portions of the Williams affidavit, the Durham affidavit, the Accuval Appraisal, the DH Capital Report, and all of but one of the objections to the Bogdanoff affidavit. Beal's objections to Esty's fourth and fifth amended petitions were also sustained. The order provides that "any evidence to which Defendants' objection is sustained is hereby stricken from the summary judgment record and is not considered for summary judgment purposes." The order also strikes the Bogdanoff affidavit in its entirety for failure to provide Bogdanoff's expert report in accordance with TEX.R. CIV. P. 194.2 and the court's scheduling order.

This appeal followed. Esty complains about the timeliness of the trial court's post-judgment orders and the striking of his amended petitions, summary judgment response and appendix, and the Bogdanoff affidavit. Esty also argues the trial court erred in granting summary judgment on his claims for breach of contract, promissory estoppel, fraud, fraudulent inducement, DTPA, breach of fiduciary duty, negligent misrepresentation, and conspiracy. Esty does not challenge the trial court's judgment on his claims for negligence, conversion, economic duress, and unjust enrich-

---

**2.** A Mother Hubbard clause is a phrase which states that all relief not expressly granted is denied. *See Lehmann v. Har–Con Corporation,* 39 S.W.3d 191, 203 (Tex.2001).

ment. Beal asserts Esty lacks standing to assert any claims at all.

## DISCUSSION

### 1. STANDING

■ Before we address the merits of the appeal, we must first address Beal's contention that Esty lacks standing to assert claims that belong to ICG. Standing, a necessary component of subject matter jurisdiction, is a constitutional prerequisite to maintaining a suit under Texas law. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444–45 (Tex.1993). A standing defect cannot be waived and can be raised for the first time on appeal. *Id.* at 445–46. A party's standing to pursue a claim is a question of law that we review de novo. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).

■ Standing is a party's justiciable interest in a controversy. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661–62 (Tex.1996); *Town of Fairview v. Lawler,* 252 S.W.3d 853, 855 (Tex.App.-Dallas 2008, no pet.). Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate. *Cadle Co. v. Lobingier,* 50 S.W.3d 662, 669–70 (Tex.App.-Fort Worth 2001, pet. denied). Only the person whose primary legal right has been breached may seek redress for an injury. *Nauslar v. Coors Brewing Co.,* 170 S.W.3d 242, 249 (Tex.App.-Dallas 2005, no pet.). In reviewing standing on appeal, we construe the petition in favor of the plaintiff, and if necessary, review the entire record to determine if any evidence supports standing. *See Tex. Air Control Bd.,* 852 S.W.2d at 446.

Beal's argument is premised on the language of the Bankruptcy Assignment which assigns claims against Beal and CSG "in connection with the loan commitment made by Beal ... to enable ICG to acquire assets from Corban...." Beal contends there was no loan commitment and therefore the assignment does not enable Esty to bring this suit. We decline to adopt such a restrictive interpretation.

■ When construing agreements, an agreement which is worded in such a fashion that it can be given a certain or definite legal meaning is not ambiguous and will be enforced as written. *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 888–89 (Tex.1998). Here, neither party alleges that the assignment is ambiguous, and we agree. Therefore, we restrict our analysis to the plain language of the assignment to determine the nature and scope of the assigned interest. *See Yzaguirre v. KCS Resources, Inc.,* 53 S.W.3d 368, 372–73 (Tex.2001).

■ The reference to the loan commitment should not be read in isolation. Rather, the language of assignment should be read in its entirety to avoid semantical gymnastics and give effect to the intentions of the parties. Whether there was a loan commitment was one of the critical issues in dispute in the court below. Esty's claims are "in connection with" the alleged loan commitment that he believed would facilitate the purchase of Corban's assets by ICG. Read as a whole, the language is sufficiently specific to identify the transaction out of which the claims arise. Therefore, we conclude that the assignment was effective to convey ICG's claims against Beal and CSG in this lawsuit. Because EAI acquired the right to assert the claims by assignment, EAI has standing to bring this suit.[3]

3. Although we have defined Esty and EAI together as "Esty" for ease of reference, we note that the assignment was to EAI and

### 2. THE COURT'S ORDERS

*Were the Post–Judgment Orders Within the Bounds of the Court's Plenary Power?*

Our primary challenge in this case is to identify the evidence comprising the summary judgment record. Evidence which has been excluded by written order or ruling of the trial court is not part of the summary judgment evidence to be considered. *Rayl v. Borger Econ. Devel. Corp.*, 963 S.W.2d 109, 113 (Tex.App.-Amarillo 1998, no pet.). But we cannot ascertain the status of the evidence until we determine the effect of the court's post-judgment orders. Because the court's post-judgment orders are atypical and somewhat unconventional, this determination requires more extensive analysis of the orders and the context in which they were entered than would ordinarily be required.

We first examine the orders to determine if they were signed within the trial court's plenary power. There is no question that the final judgment was in fact a final judgment because it disposed of all parties and claims. *See Ortiz v. Legal Concierge, Inc.*, 263 S.W.3d 385, 390 (Tex. App.-Dallas 2008, pet. denied). A trial court retains jurisdiction over a case for a minimum of thirty days after a final judgment, during which time the court has plenary power to change its judgment. *See* TEX.R. CIV. P. 329b(d); *Lane Bank Equip. Co. v. Smith Southern Equipment, Inc.*, 10 S.W.3d 308, 310 (Tex.2000). Certain post-judgment motions, if filed within this initial thirty day period, extend the trial court's plenary power for up to an additional seventy-five days. *See* TEX.R. CIV. P. 329b(c), (e) & (g). When a motion for new trial is timely filed, the trial court has plenary power to vacate, modify, correct, or reform the judgment until thirty days after the motion is overruled, either by a written order or by operation of law, whichever comes first. TEX.R. CIV. P. 329b(e); *Moritz v. Preiss*, 121 S.W.3d 715, 720 (Tex.2003); *Malone v. Hampton*, 182 S.W.3d 465, 468 (Tex.App.-Dallas 2006, no pet.). In either event, the court's plenary power may not be extended more than 105 days after the judgment was signed. *Lane Bank Equip. Co.*, 10 S.W.3d at 310.

In the instant case, the final judgment was signed on October 16, 2007. Esty filed a motion for new trial on October 25, 2007, which was denied by written order on December 6, 2007. Esty filed a notice of appeal on December 17, 2007. The filing of a notice of appeal does not divest the trial court of its plenary power. *See* TEX.R. CIV. P. 329b(d); *Oscar Telfair III, P.C. v. Bridges*, 161 S.W.3d 167, 173 (Tex.App.-Eastland 2005, no pet.). Therefore, the trial court retained plenary power over the case until January 5, 2008.

The question arises, however, whether the court exceeded the parameters of its plenary power by signing the post-judgment orders. Although the post-judgment orders were collateral to the judgment, they cannot properly be characterized as vacating, modifying, correcting, or reforming the judgment under Rule 329b. We must therefore determine whether the signing of the orders was within the bounds of the court's plenary authority.

We begin our analysis with the well-established principle that a trial court retains full control over its judgment while it has plenary power. *See Polk v. Southwest Crossing Homeowners Ass'n*, 165 S.W.3d 89, 95 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). Within this time period, the trial court's power to modify its

other than the DTPA claim asserted by Esty individually, the claims are brought by EAI.

judgment has been described as "practically unlimited" or "virtually absolute." *Rogers v. Clinton*, 794 S.W.2d 9, 12 (Tex.1990). The term "plenary" is defined as "full," "complete," or "entire." *WMC Mortg. Corp. v. Starkey*, 200 S.W.3d 749, 752 (Tex. App.-Dallas 2006, pet. denied). Indeed, this court has defined plenary power as "the court's power to dispose of any matter properly before it." *Id.* at 751. A court may also reconsider its rulings at any time before its plenary power expires. *See Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex.1993). As the Texas Supreme Court noted when discussing the trial court's authority to determine a motion for sanctions during its period of plenary power, "[a] trial court's power to decide a motion for sanctions ... is no different than *its power to decide any other motion during its plenary jurisdiction.*" *Scott & White Mem. Hospital v. Schexnider*, 940 S.W.2d 594, 596 (Tex.1996) (emphasis added). Because the court has full authority to determine motions during its plenary jurisdiction, we conclude the trial court had the power to enter the post-judgment orders at issue in this case.

### Were the Post–Judgment Orders Timely?

■ Our determination that the court's orders were within the scope of its plenary power does not resolve the effect to be given these orders. Esty maintains the trial court abused its discretion because the post-judgment orders were not timely, but provides no authority to support this contention.

■ Although we are troubled by the timing of the orders, we note that the Texas Rules of Civil Procedure do not prescribe a period of time in which a court is required to rule on summary judgment objections. *See* Tex.R. Civ. P. 166a. There is no doubt that "the better practice" is for the court to disclose, in writing, its rulings on all objections to the summary judgment evidence at or before the time it signs an order granting or denying summary judgment. *Stewart v. Sanmina Texas, L.P.*, 156 S.W.3d 198, 207 (Tex. App.-Dallas 2005, no pet.) (quoting *Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655, 663 (Tex.App.-Waco 2002, no pet.)). In this case, however, the parties agreed that the trial court need not hear the objections to the summary judgment evidence at the time of the summary judgment hearing. Neither party requested a ruling on the objections until after the final judgment was signed, nor did either complain that the trial court failed to rule. Therefore, Esty has failed to preserve his complaint about the timeliness of the post-judgment orders for our review. *See* Tex.R.App. P. 33.1. Esty's complaint about the timeliness of the post-judgment orders (expressed as a sub-issue to issues one, two, three, and four) is overruled.

### Striking the Expert Report

■ The trial court not only struck portions of the Bogdanoff Affidavit based on the objections to its evidentiary integrity, it also struck the affidavit in its entirety for failure to comply with the court's scheduling order. Esty contends the trial court erred because he was not required to produce an expert report and the court's ruling was tantamount to an improper death penalty sanction. We disagree with both assertions.

■ A trial court has the authority to impose sanctions for the failure to comply with a pretrial order. *See Koslow's v. Mackie*, 796 S.W.2d 700, 703 (Tex.1990) (trial court's power to sanction for violation of pretrial order implicit under Rule 166). We review a trial judge's enforcement of a scheduling order for an abuse of discretion. *G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 542 (Tex.App.-

Dallas 2005, no pet.). A trial judge abuses his discretion when he acts arbitrarily or unreasonably without reference to any guiding rules or principles. *Id.*

Esty maintains rule 195 provides a party with the option to either produce an expert report or tender the expert for a deposition. *See* Tex.R. Civ. P. 195. Esty's argument is unpersuasive. At the summary judgment hearing, Esty *acknowledged* that the court's scheduling order supplanted the general rule. *See* Tex.R. Civ. P. 190.4 & 191.1.

Esty next asserts that the scheduling order did not require expert reports. The scheduling order required the parties to "designate experts and provide reports" within the specified time period. The time period was extended for two weeks in response to Esty's motion. Moreover, the fact that Esty requested the extension of time and provided expert reports for other expert witnesses suggests Esty was cognizant of the requirement at the time he sought additional time to comply. The scheduling order is clear and unambiguous, and we decline to adopt Esty's proffered interpretation.

Esty failed to comply with the court's scheduling order by timely providing an expert report for Bogdanoff. Under these circumstances, we cannot conclude the trial court abused its discretion by striking the Bogdanoff Affidavit in its entirety. The remainder of Esty's fourth issue is overruled.

### Striking the Amended Petitions

The trial court struck Esty's fourth and fifth amended petitions because Esty allegedly did not comply with the court's scheduling order and failed to seek leave to amend under Tex.R. Civ. P. 63. In his third issue, Esty asserts the trial court abused its discretion in striking the fourth and fifth amended petitions. Although the parties make no distinction between these petitions, the record reflects that the petitions were filed on different dates. Therefore, the analysis differs for each.

The fifth amended petition was filed first, on July 16, 2007. The scheduling order provided that amended pleadings "asserting new claims or defenses" were to be filed 120 days before the initial trial setting. "[O]ther amended pleadings" were to be filed 45 days before the initial trial setting. The initial trial setting was September 24. The fifth amended petition did not assert any new claims or defenses. As a result, the petition was timely filed within 45 days of the initial trial setting.

When the fifth amended petition was filed, Esty was not required to seek leave to amend. Rule 63 requires leave of court when pleadings are filed within seven days of the date of trial. *See* Tex.R. Civ. P. 63. For purposes of computing the seven day period before a summary judgment hearing, the day of filing is not included in the computation, but the day of the hearing is included. *See Sosa v. Central Power & Light,* 909 S.W.2d 893, 895 (Tex.1995). Because the summary judgment was scheduled for July 23 and the fifth amended petition filed on July 16, Esty was not required to seek leave to amend and the trial court abused its discretion in striking the fifth amended petition. However, pleadings are not summary judgment evidence, so Esty could not have relied on the petition to create a fact issue even if it had remained part of the record. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 660 (Tex.1995) (pleadings are not summary judgment evidence). Therefore, the court's error probably did not cause the rendition of an improper judgment or prevent the proper presentation of the case on appeal. *See* Tex.R.App. P. 44.1(a)(1).

■ On the other hand, the fourth amended petition bears a file stamp date of July 18.[4] Although the fourth amended petition was timely filed under the court's scheduling order, it was not filed within seven days of the summary judgment hearing and Esty did not seek leave to amend. Therefore, the trial court did not abuse its discretion in striking the fourth amended petition. Esty's third issue is overruled.

### Striking the Summary Judgment Response and Appendix

■ The trial court's summary judgment order indicates the trial court considered the summary judgment response. As we discussed previously, a subsequent order states the response was struck. In his fourth issue, Esty maintains the trial court erred in striking the summary judgment response and appendix for failure to comply with local rule 2.05.[5] We agree.

Dallas County local rule 2.05 requires service of documents relating to expedited relief or to "matters set for hearing within seven days of filing" in a manner that will ensure receipt of the papers by opposing parties on the same day the papers are filed. *See* Dallas (Tex.) Civ. Dist. Ct. Loc. R. 2.05.

Beal filed the motions for summary judgment on April 20, 2007, and filed a supplement to the motions of June 29, 2007. The hearing was held on July 23, 2007. Thus, the response and appendix did not pertain to a matter set for hearing within seven days of filing and the trial

court abused its discretion by striking these documents.

■ To read and enforce local rule 2.09 to mandate a different type of service than that prescribed by rule 21a is also impermissible. *See* Tex.R. Civ. P. 21a (service of any document other than citation may be by personal delivery, certified or registered mail, or telephonic transmission); Tex.R. Civ. P. 3a(1) (no local rule may be inconsistent with the Texas Rules of Civil Procedure); Tex.R. Civ. P. 3a(6) (no local rule not in compliance with rule 31 may ever be applied to determine the merits of any matter); *see also, United Mktg. Tech., Inc. v. First USA Merch. Serv., Inc.,* 812 S.W.2d 608, 611 (Tex.App.-Dallas 1991, writ denied) (trial court abused its discretion by allowing a local rule to change the time for filing amended pleadings in a manner inconsistent with rule 63). Courts cannot ignore the plain meaning of the Texas Rules of Civil Procedure, which have the same effect as statutes, and must construe the rules to ensure a fair and equitable adjudication of the rights of litigants. *Id.* Rule 166a(c) allows responses to summary judgment motions to be filed and served not later than seven days before the hearing, and the service methods of rule 21a are not altered for such responses. *See* Tex.R. Civ. P. 166a(c), 21a. The trial court here abused its discretion by invoking a local rule to strike the response and appendix served in accordance with the Texas Rules of Civil Procedure and by using a local rule to adjudicate the summary judgment. Esty's complaint the trial court wrongfully struck the response

---

4. Although the certificate of service states the fourth amended petition was served via certified mail on July 16, because the issue is whether Esty was required to seek leave to amend under Rule 63, our analysis turns on the date of filing rather than the date of service. *See* Tex.R. Civ. P. 63.

5. Our reference to the response is to the response that is file stamped July 16, 2007. There is no reference to or explanation for the response that is file stamped July 18. No one has argued the mailbox rule would alter the date of filing. *See* Tex.R. Civ. P. 5.

and appendix (expressed in issue number two) is sustained. We will consider the response and appendix in our summary judgment review.

### 3. SUMMARY JUDGMENT

#### *Standard of Review*

 In his first issue, Esty argues the trial court erred in granting the motions for summary judgment because the summary judgment evidence raised material issues of fact on his claims for breach of contract, fraud, fraudulent inducement, breach of fiduciary duty, negligent misrepresentation, conspiracy and violation of the DTPA. A no-evidence summary judgment under TEX.R. CIV. P. 166a(i) is essentially a pretrial directed verdict, and a reviewing court applies the same legal sufficiency standard. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex. App.-Dallas 2000, no pet.). The party moving for summary judgment on this basis must specifically state the elements as to which there is no evidence. *See* TEX.R. CIV. P. 166a(i). The nonmovant must produce evidence raising a material fact issue on the challenged elements. *Id.* When reviewing a no-evidence summary judgment, the reviewing court views the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions. *Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the

evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). Where the trial court's judgment does not specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

To prevail on a traditional summary judgment motion, a movant must show there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex.2004). To defeat a plaintiff's cause of action on a traditional summary judgment motion, a defendant must either conclusively negate at least one element of each of the plaintiff's theories of recovery or conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 776 (Tex.App.-Dallas 2005, pet. denied). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982); *Dallas Fort Worth Int'l Airport Bd. v. Cox*, 261 S.W.3d 378, 382 (Tex.App.-Dallas 2008, no pet.). In our review, we examine the entire record in the light most favorable to the nonmovant. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 824–25 (Tex.2005). Evidence favorable to the nonmovant must be taken as true, and every reasonable inference from the evidence must be drawn in favor of the nonmovant. *Sudan*, 199

S.W.3d at 292; *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n,* 205 S.W.3d 46, 50 (Tex.App.-Dallas 2006, pet. denied). When, as here, the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the grounds presented to the trial court and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex.2003).

When the motion for summary judgment presents both no-evidence and traditional grounds, generally appellate courts review the no-evidence grounds first. *See Delaney v. Assured Self Storage,* 272 S.W.3d 837, 839 (Tex.App.-Dallas 2008, no pet.).

Based on our previous analysis, the summary judgment evidence excluded from the record includes: paragraphs 4, 7, 17, and 22 of the Williams Affidavit, the Bogdanoff Affidavit, paragraphs 25, 26, 31, 39, 40, 41, and 42 of the Esty Affidavit, paragraphs 7 and 8 of the Durham Affidavit, the Accuval Appraisal, and the DH Capital Report. We will consider all remaining summary judgment evidence.

### Breach of Contract

 Esty argues summary judgment should not have been granted on his breach of contract claim because Beal breached the "best efforts" provision of the loan agreement. Specifically, Esty maintains Beal did not provide the expedited loan process and timely notification he contracted to receive as evidenced by Beal's failure to timely obtain and review the Accuval Appraisal and submit the loan application to the executive loan committee. Esty also complains that Beal failed to provide timely written notification of its decision to reject the loan. Esty further argues that the irrevocability clause in the loan agreement precluded him from obtaining alternative financing in time to consummate the sale after the first auction, and that he could have obtained alternative financing had Beal timely notified him of its decision not to extend the loan. As a result, Esty contends he is entitled to recover out-of-pocket damages as well as lost profits.

 A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform. *Methodist Hosps. of Dallas v. Corporate Communicators, Inc.,* 806 S.W.2d 879, 882 (Tex.App.-Dallas 1991, writ denied). The elements of a claim for breach of contract are: (1) the existence of a valid contract; (2) performance or tentative performance by plaintiff; (3) breach of the contract by defendant; and (4) damage resulting to the plaintiff from the breach. *Stewart v. Sanmina Texas, L.P.,* 156 S.W.3d 198, 214 (Tex.App.-Dallas 2005, no pet.).

Addressing the no-evidence issue of damages first, we conclude there is not a scintilla of probative evidence to establish that any breach caused Esty's alleged damages. *See Southwell v. Univ. of Incarnate Word,* 974 S.W.2d 351, 354–55 (Tex.App.-San Antonio 1998, pet. denied) (evidence of injury or damage to plaintiff is an essential element of breach of contract).

 Esty's argument presupposes that if Beal had used its best efforts to process the loan application, the application either would have been approved or would have been denied in sufficient time for Esty to obtain alternative financing prior to May 24. There is, however, no evidence in the record that the proposed loan would have been approved. Despite the expert testimony that Beal did not meet industry standards for completion of the due diligence, that the asset values were sufficient to collateralize the loan, and that the loan should have been submitted to the execu-

tive loan committee, the determination of whether to extend the loan was ultimately within Beal's discretion. The loan application expressly provides that Beal is not obligated to issue a commitment letter or make a loan. Moreover, even if Beal had issued the commitment letter, several conditions precedent had to be satisfied before Beal was obligated to fund the loan, and the satisfaction of these conditions was to be determined at Beal's sole discretion. *See Centex Corp. v. Dalton,* 840 S.W.2d 952, 956 (Tex.1992) ("a condition precedent is an event that must happen or be performed before a right can accrue to enforce the obligation."). These conditions included: (1) appraisal reports on the collateral showing an appraised value acceptable to Beal; (2) surveys, title policies, environmental, engineering, and property condition reports on the collateral acceptable to Beal in its sole discretion; (3) physical condition of the collateral acceptable to Beal; and (4) such third-party consents, estoppels, and other agreements as required by Beal. A party seeking to enforce a contract has the burden of proving that all conditions precedent have been met. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 283 (Tex.1998). Here, there is not a scintilla of probative evidence that shows the conditions precedent would have been satisfied and the loan would have been funded.

■■■■■ Esty's argument concerning alternative financing is similarly unpersuasive. Esty's unilateral misinterpretation of the contract does not render it ambiguous. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex. 1998) (ambiguity does not arise merely because the parties advance conflicting interpretations). The plain language of the seven day irrevocability clause simply makes the loan application irrevocable for a period of seven days; it does not preclude Esty's exploration of other avenues for financing as he claims. In addition, the loan application obligates Beal to use its best efforts to make a determination about the loan by May 21. There is not a scintilla of probative evidence that a rejection of the loan at some unspecified date prior to May 21 would have enabled Esty to obtain alternative financing prior to the May 24 auction.

Esty's proof of his alleged damages also fails. Esty claims to be entitled to $117,496 in out-of-pocket damages ($150,-000 work fee plus $50,000 expense deposit less the $82,504 refund). But there is no summary judgment evidence to establish that Esty did not receive $117,496 worth of work from Beal. The evidence shows that $50,000 was paid for the Accuval Appraisal, and the Appraisal was completed. In fact, Esty's own experts utilized and relied on the Accuval Appraisal in forming their opinions.

Esty also argues that he is entitled to recover lost profits. Again, this argument is premised on the assumption that but for Beal's alleged bad acts, some loan would have been timely funded to enable Esty to consummate the purchase at the first bankruptcy auction. Esty relies on the Williams Affidavit and the Durham Affidavit to prove these alleged damages. In the Durham Affidavit, Durham states that he has been retained as a testifying expert. Despite his status as a testifying expert, Durham then states that he has prepared a report of his opinions "solely for Mr. Esty and his counsel for use in the ... litigation." Durham states that because the lost profits "continue into perpetuity," he utilized lost value as the economic measure of profits. Durham then reports that he has calculated the lost profits by comparing the value of Esty's interest in ICG "before the alleged conduct" with the value of Esty's interest in ICG "after the

alleged conduct." Durham does not provide these calculations, but states he has reached "the preliminary opinion" of damages in excess of $20 million. Durham provides no basis for his assumption that lost profits continue into perpetuity, nor does he provide a time frame for the before and after calculations he performed but did not disclose.

Esty also relies on language in the bankruptcy order authorizing the asset sale which states that "delaying the asset sale will result in a loss of value." Even if the evidence reflected that this prediction proved true, neither expert quantifies the value lost between the May 24 auction and the July 26 consummation of the sale after the second auction. Indeed, Durham does not state whether this time frame and the eventual consummation of the purchase was considered in his damage calculation and mere conclusions cannot raise a fact issue. *See Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no pet.).

 The Williams Affidavit is similarly insufficient to raise a fact issue. Although Williams does provide his expert report, the report does not explain or quantify the damages he believes were sustained. Instead, Williams simply opines that Beal's actions "caused plaintiffs to unnecessarily incur substantial and continuing financial damages." An affidavit that does not provide underlying facts to support a conclusion is conclusory. *See Rizkallah*, 952 S.W.2d at 587. An objection that an affidavit is conclusory is an objection to the substance of the affidavit and may be raised for the first time on appeal. *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex.App.-Dallas 2004, no pet.). Conclusory statements of expert witnesses are not sufficient to create a question of fact to defeat summary judgment. *See McIntyre v. Ramirez*, 109 S.W.3d 741, 749

(Tex.2003). Both the Williams Affidavit and the Durham Affidavit are conclusory and therefore not sufficient to raise a material fact issue to defeat summary judgment. Because Esty failed to raise a material fact issue on whether Beal's alleged breach caused him to suffer damages, the trial court did not err in granting summary judgment on the breach of contract claim.

### Fraud and Negligent Misrepresentation

 Esty asserts the trial court erred in granting summary judgment on his fraud and negligent misrepresentation claims. Beal responds that Esty cannot recover on these tort claims because he did not suffer an injury independent of his claims for breach of contract. We agree with Beal.

 Although a party's actions may breach duties in tort, contract, or both, Texas jurisprudence has long recognized that "mere nonfeasance under a contract creates liability only for breach of contract." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex.1996). Thus, tort damages are generally not recoverable unless the plaintiff suffered an injury that is independent and separate from the economic losses recoverable under a breach of contract claim. *See Formosa Plastics Corp., USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45–47 (Tex.1998); *S.W. Bell v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991) (analyzing both the source of the duty and the nature of the remedy in determining a claim's characterization as sounding in either contract or tort); *see also Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442–43 (Tex.1991) (adopting independent injury requirement of section 552B of Restatement (Second) of Torts). The independent injury rule applies to claims for negligent misrepresentation and to claims for fraud. *See D.S.A., Inc. v.*

*Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex.1998) (per curiam) (fraud and negligent misrepresentation); *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 467 (Tex.App.-Dallas 2006, pet. denied) (negligent misrepresentation).

■ The burden to prove an independent injury is on the plaintiff claiming negligent misrepresentation. *Plano Surgery Center v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 503 (Tex.App.-Dallas 2008, no pet.). In support of his negligent misrepresentation claim, Esty argues Beal "made multiple misrepresentations related to and arising out of the May 12, 2004 'Application for Loan.'" Esty also contends he was led to believe Beal would issue the commitment letter when Beal failed to provide notice that the loan had been rejected. The alleged misrepresentations involve the timely issuance of a rejection letter, submission of the application to the executive loan committee, timely completion of the due diligence, and the timely completion and consideration of the appraisal. All of these duties arise under the contract and fall within the pleaded breach of contract claim. Therefore, any injury due to negligent misrepresentation is not independent of the damages for breach of contract. *See Blue Star Operating Co. v. Tetra Tech., Inc.*, 119 S.W.3d 916, 922 (Tex.App.-Dallas 2003, pet. denied).

■ Esty argues that he asserted these theories in the alternative, and notes that he has abandoned the breach of contract claim based on the promise to extend the loan. Esty's abandonment of one aspect of his breach of contract claim on appeal is immaterial because he still claims the contract was breached by Beal's failure to use its best efforts. Moreover, pleading in the alternative does not preclude the application of the independent injury rule. *See Cessna Aircraft Co.*, 213 S.W.3d at 466–67.

■ The lack of an independent injury is also demonstrated by Esty's proffered evidence of damages. A plaintiff cannot recover benefit-of-the bargain damages for negligent misrepresentation; a plaintiff can only recover for out-of-pocket loss. *D.S.A.*, 973 S.W.2d at 663–64. Esty claimed he was entitled to lost profits, but lost profits are not out-of-pocket damages. *Formosa*, 960 S.W.2d at 49–50. In addition, most of Esty's proposed damages evidence concerns the amount he claimed he was entitled to recover because he was unable to consummate the asset sale at the first auction—the benefit of the bargain. Esty's out-of-pocket expenses consisted of the $50,000 expense deposit and the $150,000 work fee, but he has failed to present any evidence of how these expenses are distinct from the loss under his breach of contract claim.

■ With regard to fraud, most of the misrepresentations occurred prior to the execution of the May 12, 2004 loan application. As a result, these alleged misrepresentations pertain to a claim for fraudulent inducement rather than fraud. *See James L. Gang & Assocs. Inc. v. Abbott Labs., Inc.*, 198 S.W.3d 434, 442 (Tex.App.-Dallas 2006, no pet.) (fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof). Any misrepresentations that occurred after the May 12 application relate to Beal's performance under the loan application, and the alleged damages stem from a failure to perform the contract. Because Esty had no independent injury apart from his contract damages, he did not have a viable claim for fraud or negligent misrepresentation.

### Fraudulent Inducement

■ The independent injury rule does not preclude Esty's fraudulent in-

ducement claim. *Formosa,* 960 S.W.2d at 47. Tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract. *Id.*

Esty argues he was fraudulently induced to sign the May 12 loan application and pay the $150,000 work fee. Esty asserts Beal misrepresented that due diligence could be expedited and timely completed and concealed Andrew Beal's veto power. Esty further asserts that Beal made false statements concerning the loan committee, false status reports, and false statements about the presentation of the application to the executive loan committee on May 7. As a result, Esty claims he is entitled to recover lost profits as damages.

■ To prevail on a fraud claim, a plaintiff must prove: (1) the defendant made a material misrepresentation that was false; (2) the defendant knew it was false when made or made it recklessly as a positive assertion without any knowledge of its truth; (3) defendant intended the plaintiff to act upon the representation; and (4) plaintiff actually and justifiably relied on the misrepresentation and suffered injury. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex.2001). In a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties. *Haase v. Glazner,* 62 S.W.3d 795, 798–99 (Tex.2001).

We have already determined that Esty's evidence of lost profits does not raise a material issue of fact. Therefore, Esty failed to present evidence of the damages element of his fraudulent inducement claim, and the trial court did not err in granting summary judgment.

### Breach of Fiduciary Duty

■ Esty contends the trial court erred in granting summary judgment on his breach of fiduciary duty claim. We disagree.

■ The elements of a breach of fiduciary duty cause of action are (1) a fiduciary relationship must exist between the plaintiff and the defendant, (2) the defendant must have breached its fiduciary duty to the plaintiff, and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. *See Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 200–01 (Tex.2002). When the underlying facts are undisputed, the determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court. *Meyer v. Cathey,* 167 S.W.3d 327, 330 (Tex.2005).

■ In certain formal relationships such as an attorney-client relationship, a fiduciary duty arises as a matter of law. *See Johnson,* 73 S.W.3d at 199. Texas courts also have recognized that certain informal relationships may give rise to a fiduciary duty. *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex.1992). An informal fiduciary relationship exists "where, because of family relationship or otherwise, [one party] is in fact accustomed to be guided by the judgment or advice" of the other. *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962). "Such informal fiduciary relationships have also been termed 'confidential relationships' and may arise 'where one person trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one.'" *Crim Truck & Tractor Co.,* 823 S.W.2d at 594. Stated another way, a party fails to comply with his fiduciary duty "where influence has been acquired and abused, and confidence has been reposed and betrayed."

*Hoggett v. Brown,* 971 S.W.2d 472, 488 (Tex.App.-Houston [14th Dist.] 1997, pet. denied).

A person is justified in placing confidence in the belief that another party will act in his or her best interest only where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship, as well as personal friendship. *Hoggett,* 971 S.W.2d at 488. "The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved." *Thigpen,* 363 S.W.2d at 253. If a business transaction is involved, the confidential relationship must exist prior to, and apart from, the agreement made the basis of the suit. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 288 (Tex.1998). However, evidence of a party's subjective feelings is insufficient, without more, to establish the existence of a confidential relationship. *Thigpen,* 363 S.W.2d at 253. Mere subjective trust does not transform an arm's-length transaction into a fiduciary relationship. *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998).

Esty argues that he placed his trust and confidence in Beal because Beal represented that it had substantial bankruptcy experience and could meet the auction deadline. This subjective trust, however, does not establish a fiduciary relationship.

Citing *In re Absolute Resource Corp. v. Hurst Trust,* 76 F.Supp.2d 723, 724 (N.D.Tex.1999), Esty also argues that Springfield's counseling regarding the DIP loan and the bankruptcy deposit, as well as Springfield's commitment to keep Esty informed of any circumstances that could jeopardize his $450,000 deposit are all separate prior transactions that created a fiduciary relationship.

*Hurst Trust* does not stand for the proposition Esty seeks to advance. The court in *Hurst Trust* declined to find a fiduciary relationship between the lender and a potential borrower, and observed that lenders ordinarily have no fiduciary duty to borrowers or putative borrowers. *Id.* at 734. The court noted that "to prove a fiduciary relationship does exist in such context, the plaintiff must show extraordinary circumstances such as excessive control and influence by the lender on the borrower's business." *Id.* (citing *Greater Southwest Office Park, Ltd. v. Texas Commerce Bank Nat'l Ass'n,* 786 S.W.2d 386, 391 (Tex.App.-Houston [1st Dist.] 1990, writ denied)). There are no extraordinary circumstances here. Esty did not establish the existence of a confidential relationship that would give rise to a fiduciary duty. As a result, the trial court properly granted summary judgment on the breach of fiduciary duty claim.

### Conspiracy

An actionable conspiracy requires: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result. *Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex.1996). A plaintiff must prove the conspirators' specific intent to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Id.*

Esty's conspiracy argument consists of boilerplate allegations from his pleadings, and Esty fails to cite any specific evidence of the alleged conspiracy. Based on our review of the record and viewing the evidence under the appropriate standards, we conclude that the trial court did not err when it granted summary judgment on the conspiracy claim.

### Promissory Estoppel/Ratification

Esty references ratification as some basis for the trial court's error. We

note at the outset that ratification is an affirmative defense, not a theory of recovery. *See Land Title Co. v. F.M. Stigler, Inc.,* 609 S.W.2d 754, 756 (Tex.1980). Appellate briefs must contain appropriate citations to authorities and to the record. Tex.R.App. P. 38.1(h), 38.2(a)(1). An argument may be waived if inadequately briefed. *Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex.1994); *Gray v. Nash,* 259 S.W.3d 286, 294 (Tex.App.-Fort Worth 2008, pet. denied). Because of the absence of authority or analysis on the issue of ratification, we will not consider this complaint.

 Promissory estoppel may be utilized to enforce a promise when a plaintiff justifiably and reasonably relies on the promise to his detriment, it was foreseeable that the plaintiff would rely on the promise, and injustice can only be avoided by enforcement of the promise. *See Boy Scouts v. Responsive Terminal Sys.,* 790 S.W.2d 738, 742 (Tex.App.-Dallas 1990, writ denied). A promise must be sufficiently definite to support promissory estoppel. *Gillum v. Republic Health Corp.,* 778 S.W.2d 558, 570 (Tex.App.-Dallas 1989, no writ). A promise must also be more than speculation of future events, a statement of hope, an expression of opinion, an expectation, or an assumption. *City of Beaumont v. Excavators & Constructors, Inc.,* 870 S.W.2d 123, 138 (Tex.App.-Beaumont 1993, writ denied). Lost profits are not recoverable under promissory estoppel; a plaintiff may only recover reliance damages. *Fretz Constr. Co. v. Southern Nat'l Bank,* 626 S.W.2d 478, 483 (Tex. 1981).

Esty argues there is more than a scintilla of evidence that Beal should have expected its promise to issue the commitment letter would induce Esty's reliance. Esty fails to identify the evidence support-ing this contention and our review of the record has not revealed any. Therefore, we conclude the trial court did not err in granting summary judgment on Esty's promissory estoppel claim.

### Deceptive Trade Practices Act (Esty in his individual capacity)

Esty contends the trial court erred in granting summary judgment on his DTPA claim against CSG because the evidence shows that CSG "made false representations and failed to disclose certain information" when he sought CSG's advice about how to fund the $450,000 bankruptcy deposit. Esty fails to specify the nature of the false representations or the information that was not disclosed and does not identify any evidence that might support such a claim. Based on our review of the record, we conclude the trial court did not err when it granted summary judgment against CSG on the DTPA claim asserted by Esty in his individual capacity. Esty's first issue is overruled.

### Conclusion

The trial court's judgment is affirmed.