

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00061-CV

THE CITY OF KELLER

APPELLANT

V.

KIMBERLEE DIANE MEADORS
HALL AND A. THOMAS HALL

APPELLEES

----------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## DISSENTING OPINION

----------

The majority opinion, while thorough and meticulously written, strays from the appropriate standard of review as mandated by the supreme court. Because this standard of review dictates a different result, I dissent.

## I.  APPLICABLE STANDARD OF REVIEW AND BURDENS OF PROOF

The standard of review and the resultant burdens of proof routinely prescribe an appeal's direction and result.  *See* W. Wendell Hall et al., *Hall's Standards of Review in Texas*, 42 St. Mary's L.J. 3, 13 (2010).  Therefore, it is imperative to carefully state and follow the applicable standard.

We have been granted specific appellate jurisdiction over interlocutory appeals of orders that either grant or deny pleas to the jurisdiction by a governmental unit.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2013).  A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction.  *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  There are two types of pleas to the jurisdiction:  (1) a pleadings challenge, which examines whether the plaintiff has alleged facts that affirmatively demonstrate the trial court's subject-matter jurisdiction, and (2) a challenge to the existence of jurisdictional facts.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Here, the City proffered evidence in support of its plea and raised the absence of any evidence to show the City knew or was substantially certain that damage would occur as a result of the City's complained-of actions, rendering the City's plea a challenge to the existence of jurisdictional facts.  Thus, the City's jurisdictional challenge is to be decided under a traditional summary-judgment standard in the trial court and reviewed de novo on appeal.  *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009); *Miranda*, 133 S.W.3d at 227–28.

*See generally* Tex. R. Civ. P. 166a(c) (traditional summary-judgment rule providing movant entitled to judgment as a matter of law if "there is no genuine issue as to any material fact" regarding "the issues expressly set out in the motion or in an answer or any other response").

Once the Halls sufficiently pleaded an inverse-condemnation claim showing the trial court's subject-matter jurisdiction, the City had the initial burden to then adduce evidence establishing that the trial court lacked jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 225–26, 228. The burden then shifted to the Halls to show that a genuine issue as to any material fact existed regarding the trial court's jurisdiction. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010); *Miranda*, 133 S.W.3d at 228. In other words, the Halls had to raise a genuine issue as to whether the City "*knew* (not should have known) that flooding was substantially certain." *City of Keller v. Wilson*, 168 S.W.3d 802, 829 (Tex. 2005).[1] This required them to bring forth evidence of "objective indicia of intent" showing the City knew harm to the property would result from the City's actions. *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004). If

---

[1]The majority opinion points out that *Wilson* was before the supreme court after a jury verdict and, thus, asserts that *Wilson* is not instructive regarding what the Halls had to demonstrate to avoid the City's jurisdictional plea. Majority Op. 39. Although the majority opinion correctly points out that the Halls were not required to show that the City knew damage to the Hall's property would result by a preponderance of the evidence or as a matter of law, the Halls *were* required to raise a genuine issue of material fact showing that the City knew or was substantially certain that damage to the Halls' property would result at the time it took the complained-of actions.

a genuine issue concerning jurisdiction is raised by the submitted evidence, the trial court cannot grant the plea to the jurisdiction before that fact issue is resolved by the fact-finder. *Miranda*, 133 S.W.3d at 227–28. If the relevant evidence is undisputed or does not raise a genuine issue as to any material fact regarding jurisdiction, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

## II. SCOPE OF REVIEW

### A. CONSIDERATION OF THE ENTIRE RECORD

In our de novo review of the trial court's denial of the City's plea, we consider the entire record, as it existed at the time the trial court denied the City's plea, in the light most favorable to the Halls and indulge every reasonable inference and resolve any doubts in favor of the Halls. *Wilson*, 168 S.W.3d at 824; Hall, *supra*, at 155. The majority opinion states that it considered evidence that was excluded by the trial court in its de novo review of the trial court's denial of the plea. Majority Op. 44. The City argues on appeal that the trial court abused its discretion by excluding the evidence.

However, appellate review of a plea to the jurisdiction "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Miranda*, 133 S.W.3d at 228; *cf. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000) (recognizing standard for granting summary judgment under Fed. R. Civ. P. 56 mirrors standard for judgment as a matter of law under Fed. R. Civ. P. 50(a)). Under a summary-judgment review,

4

an appellate court may not consider stricken portions of the record because such evidence is not a part of the summary-judgment record. *See Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 898 n.2 (Tex. App.—Austin 2010, no pet.); *Esty v. Beal Bank, S.S.B.*, 298 S.W.3d 280, 294 (Tex. App.—Dallas 2009, no pet.). Therefore, if the trial court correctly struck the City's evidence or if the aggrieved party failed to properly challenge the trial court's ruling on appeal, that evidence cannot be part of our de-novo review of the trial court's denial of the plea to the jurisdiction because such evidence was not part of the record when the trial court ruled on the City's plea. *See Kaufman v. Islamic Soc'y of Arlington*, 291 S.W.3d 130, 137 n.15 (Tex. App.—Fort Worth 2009, pet. denied); *cf.* Hall, *supra*, at 155 ("The appellate court 'can consider the record *only as it existed at the time summary judgment was entered.*'" (emphasis added) (citation omitted)).

Accordingly, this court first must determine whether the trial court abused its discretion in excluding the City's evidence as urged by the City on appeal. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) ("The court of appeals [in reviewing the trial court's grant of summary judgment] erred in considering Elwell's causation testimony from the bill of exceptions without having first determined, pursuant to properly assigned error, that the trial court erred in refusing to admit the testimony and reconsider its decision to exclude Elwell's causation opinions.") If the trial court did abuse its discretion, the excluded evidence may be considered in a de novo review of the plea to the jurisdiction. If it did not, an appellate court's de novo review may not consider the

5

appropriately excluded evidence. In short, application of the standard of review may be had only after a determination of its scope. Thus, I disagree with the majority opinion's assertion that we need not determine whether the trial court abused its discretion in excluding the evidence. Majority Op. 44–45.

## B. EXCLUSION OF THE CITY'S EVIDENCE BASED ON NON-DISCLOSURE

During discovery, a deadline was set by which testifying experts were required to be disclosed to the opposing party. *See* Tex. R. Civ. P. 194.2(f), 195.2. The City filed a summary-judgment motion and plea to the jurisdiction to which it attached several exhibits. The Halls objected to several of the City's attached exhibits because they constituted "hearsay" and "expert testimony offered without designation of expert witness." Regarding the Halls' non-designated-expert objection, the City responded that the exhibits were either "on file and were served on August 11, 2011," or "government records or reports [that are] authenticated or are self-authenticating." The trial court excluded seventeen of the City's exhibits—Exhibits A-8 through A-12, A-14 through A-21, and C through F—on the basis that they constituted expert testimony offered without timely prior disclosure.[2] The City asserts that (1) the disclosure requirements do

---

[2]Regarding Exhibit A-13, the trial court checked both "Sustained" and "Overruled" regarding the Halls' objection that the exhibit constituted inadmissible hearsay. However, the trial court specifically noted that it overruled the Halls' hearsay objections to "exhibits A-8 through A-21" because those exhibits were "not offered to prove [the] truth of matter asserted, and thus [are] not hearsay." Therefore, the Halls' hearsay objections were expressly overruled. The trial court checked neither "Sustained" nor "Overruled" regarding the Halls' objection to Exhibit A-13 on the basis that it was non-designated expert testimony.

6

not apply to the exhibits at issue and (2) the disputed exhibits were timely produced to the Halls during discovery.

First, it must be noted that two of the City's exhibits later excluded by the trial court—Exhibits A-14 and A-21—were attached to the Halls' response to the City's plea to the jurisdiction. Therefore, these exhibits were a part of the record before the trial court when it denied the City's plea to the jurisdiction, and this court may also consider them.

The remaining fifteen exhibits at issue were all excluded on the basis that the City had failed to timely disclose as experts the author of each exhibit.[3] A trial court abuses its broad discretion in excluding evidence if it acts without reference to any guiding rules or principles. *Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719, 747 (Tex. App.—Houston [1st Dist.] 2012, no

_____

Accordingly, the record—the trial court's specific notation overruling the hearsay objection and lack of any ruling on the Halls' objection based on non-designation—reflects that Exhibit A-13 was not excluded. *See* Tex. R. App. P. 33.1(a); *cf. Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied) (holding grant of summary judgment implicitly sustained movant's objections to nonmovants' summary-judgment evidence "[b]ecause the affidavits were specifically and extensively objected to in [movant's] written objections and motion to strike the affidavits").

[3]It is unclear whether the Halls argued to the trial court that the sponsoring affiant was an undesignated expert or if the authors of each exhibit had not been properly designated as experts. In their brief on appeal, they stated that the City attempted to introduce "expert opinions and testimony through certain city records of undesignated experts." But the Halls did not object to the sponsoring affiant's affidavit in the trial court. Thus, I conclude that the Halls are not arguing for the first time on appeal that the sponsoring affiant was an undesignated expert witness.

7

pet.) (op. on reh'g). A party is entitled to discover information regarding an opponent's (1) testifying experts and (2) consulting experts whose mental impressions or opinions have been reviewed by a testifying expert. Tex. R. Civ. P. 192.3(e). A party may not introduce into evidence any information that was not timely disclosed during discovery unless the trial court finds good cause or lack of unfair surprise. *See* Tex. R. Civ. P. 193.6; *Carbonara v. Tex. Stadium Group*, 244 S.W.3d 651, 657 (Tex. App.—Dallas 2008, no pet.).

The excluded exhibits were documents prepared by either the City or a federal governmental agency in preparation for the City's proposed project, communications between the Halls and the City regarding the project, or excerpts from federal agencies' reports regarding historical atmospheric and storm data in the area of the project. The exhibits were attachments to an affidavit by the City's secretary, the official custodian of the City's public records, who stated that the attachments were filed with "the City's offices" and were part of the City's public records, regularly made and preserved by the City. These exhibits cannot be characterized as expert testimony subject to exclusion for a lack of timely designation. The exhibits were not testimonial, were part of the City's regularly-kept public records, and did not contain any expert testimony; thus, the authors of those exhibits did not have to be timely designated as experts. *See* Tex. R. Evid. 803(8); *McRae v. Echols*, 8 S.W.3d 797, 799–800 (Tex. App.—Waco 2000, pet. denied); Harvey Brown, Daubert *Objections to Public Records: Who Bears the Burden of Proof?*, 39 Hous. L. Rev. 413, 414–15

8

(2002). Additionally and as the City argued in the trial court, the majority of the exhibits that were excluded on the basis that the authors were not timely designated as experts were specifically provided to the Halls during discovery and, therefore, the information could not have surprised them. *See* Tex. R. Civ. P. 193.6. Because the challenged exhibits were not subject to the expert-disclosure rule, the trial court abused its discretion by excluding the exhibits on that basis. Therefore, they should be considered in this court's review of the plea to the jurisdiction as the majority opinion does.

The majority opinion states that an additional reason that the excluded evidence should not be considered (although the majority opinion ultimately does consider the evidence in its review) is the City's failure to discuss the relevance of the evidence or any harm arising from its exclusion. Majority Op. 41–42, 44. I disagree. In the City's discussion of what it knew at the time it approved the project and in arguing that the trial court erred by concluding it had subject-matter jurisdiction, the City relies on and specifically cites to the excluded evidence. It is clear that the City recognized and argued the relevance of the excluded evidence and the resultant harm from its exclusion.

### C. APPLICATION TO FAILURE TO EXCLUDE THE CITY'S EVIDENCE ON THE BASIS OF HEARSAY

The Halls assert in a cross-point that the trial court erred by overruling their objections to the disputed exhibits on the basis of hearsay. The City asserts that because the Halls seek to alter the trial court's "judgment or other appealable

9

order," they were required to file a separate notice of appeal in order to appropriately raise this argument. Tex. R. App. P. 25.1(c). But the Halls are not seeking to alter the appealable order denying the City's plea to the jurisdiction or to receive more favorable relief than that granted by the trial court; thus, the Halls were not required to file a separate notice of appeal in order to argue alternate theories supporting the trial court's exclusion of the City's evidence. *See Oak Park Townhouses v. Brazosport Bank of Tex., N.A.*, 851 S.W.2d 189, 190 (Tex. 1993); *R.R. Comm'n v. Coppock*, 215 S.W.3d 559, 564 (Tex. App.—Austin 2007, pet. denied); *see also Dandridge v. Williams*, 397 U.S. 471, 475 n.6, 90 S. Ct. 1153, 1156 n.6 (1970).

The exhibits were not hearsay evidence, and the Halls made no attack on their trustworthiness. *See* Tex. R. Evid. 803(8). The Halls assert that the exhibits, while public records and reports, contain expert opinions subject to exclusion. In short, the Halls are merely recasting their expert-designation argument as a hearsay argument. Neither argument has merit, and the trial court did not abuse its discretion for failing to exclude the exhibits on the basis of hearsay. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 164, 167, 109 S. Ct. 439, 447, 448–49 (1988) (interpreting Fed. R. Evid. 803(8) and holding that public-record hearsay exception includes opinions and other evaluative materials contained in government reports that set forth "factual findings" unless there are indications of untrustworthiness). Because the exhibits were improperly

10

excluded, the scope of review of the trial court's denial of the City's plea to the jurisdiction should include the excluded exhibits.

## III.  GOVERNMENTAL IMMUNITY AND INVERSE-CONDEMNATION CLAIMS

A governmental entity is not entitled to governmental immunity for an inverse-condemnation claim if (1) the entity intentionally performed certain acts (2) that resulted in a taking of property (3) for public use.  *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007); *see also* Tex. Const. art. I, § 17.  The City claims that it is entitled to governmental immunity, which divested the trial court of subject-matter jurisdiction, because there is no evidence that it acted intentionally in taking the complained-of actions.  This required culpable mental state has been clearly defined by the supreme court:

> For purposes of article I, section 17, a governmental entity acts intentionally if it knows either "that a specific act [was] causing identifiable harm" or "that the specific property damage [was] substantially certain to result from" the act.  A governmental entity is substantially certain that its actions will damage property only when the damage is "necessarily an incident to, or necessarily a consequential result of the [entity's] action."  The government's knowledge must be determined as of the time it acted, not with benefit of hindsight.

*City of San Antonio v. Pollock*, 284 S.W.3d 809, 821 (Tex. 2009) (quoting *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004)).

The City's intent as defined in *Pollock* must be established under a "heightened intent standard."  *City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 168 (Tex. 2004).  "'Substantially certain' does not mean flooding is possible, at increased risk, or even more likely than not."  *Harris Cnty. Flood Control Dist.*

11

*v. Kerr*, No. 01-11-00014-CV, 2013 WL 842652, at *17 (Tex. App.—Houston [1st Dist.] Mar. 7, 2013, pet. filed) (citing *Pollock*, 284 S.W.3d at 821). In evaluating the objective indicia of the City's intent, a court must evaluate any evidence regarding what the City was told about the consequences of the actions before the City took the complained-of action. *Wilson*, 168 S.W.3d at 829. Further, mere negligence that eventually contributes to property damage does not amount to an unconstitutional taking. *Gragg*, 151 S.W.3d at 554. *Pollock* also cautions that the City's intent is determined at the time it acted and is not looked at through the distorting effects of later-acquired knowledge. *Pollock*, 284 S.W.3d at 821. With these important review standards in mind, I now turn to the evidence the trial court was in a position to consider at the time it ruled on the City's plea.

## IV. THE HALLS' PLEADINGS

As stated above, the Halls first were required to plead facts affirmatively showing the trial court's subject-matter jurisdiction. *See Miranda*, 133 S.W.3d at 225–26. The Halls alleged that the following actions taken by the City resulted in flood waters pooling and forming a retaining pond on the Halls' property:

1. Replacing the bridge located on Keller Smithfield Road, which passed over Big Bear Creek;

2. Raising the road bed of Keller Smithfield Road;

3. Widening the creek bed of Big Bear Creek as it passed under the bridge on Keller Smithfield Road;

12

4. Allowing improvements to surrounding properties, which changed the elevations and drainage characteristic of the properties; and

5. Authorizing development of other properties by other persons.

The Halls asserted that, by replacing the bridge, raising the road, and widening the creek bed,[4] the City "intended to increase the water flow from its property and the creek bed through the Hall[s'] [p]roperty" and "knew that the resulting effect would be to cause rainfall and runoff to pool and flood the [p]roperty while preventing and saving the [Keller Smithfield] road and the adjacent city park from flooding."

In asserting flooding of their property resulted from the City's actions, they pointed to a June 18, 2007 "significant rainfall" and "other periods of rainfall, some substantial, some relatively insubstantial." The Halls asserted that the "other periods of rainfall," resulting in flooding of their property, "demonstrate the continuing ongoing nature of [the City's] unlawful taking of the [p]roperty for public use, and that the [p]roperty continues to be, and will in the future continue to be, effectively a holding or retention pond for flood waters in Bear Creek." The Halls assert that the City had knowledge of the flooding occurring after "other periods of rainfall," but "failed and refused, and continues to fail and refuse, to eliminate the problem."

---

[4]I will collectively refer to these actions, which were all part of the so-called "Keller Town Center," as "the project."

It is important to note that, in their petition, they specifically allege the City's intent only as it related to the project, i.e., replacing the bridge, raising the road, and widening the creek bed. In any event, no party asserts that the Halls did not sufficiently plead an inverse-condemnation claim invoking the trial court's subject-matter jurisdiction.

## V. THE CITY'S INITIAL BURDEN

Once the Halls sufficiently pleaded an inverse-condemnation claim, the City bore the burden to adduce evidence through its plea to the jurisdiction establishing that the trial court lacked jurisdiction as a matter of law. The supreme court has stated that this burden requires the City to "assert[] and support[] with evidence that the trial court lacks subject matter jurisdiction." *Miranda*, 133 S.W.3d at 228. In so asserting, the City focused on the intent element required for inverse-condemnation claims and argued that the evidence showed it did not have the requisite intent to cause damage to the Halls' property "when it took the actions complained of," namely improvements to Keller Smithfield Road, replacement of the bridge on Keller Smithfield Road, and raising Keller Smithfield Road.

The majority opinion fully discusses the City's evidence submitted in support of its plea to the jurisdiction. Majority Op. 19–28. I disagree with the majority opinion's repeated statements that it "assumes" the City's proffered evidence relates to the Halls' property. Majority Op. 23–25, 28. This evidence was submitted in support of the City's plea to the jurisdiction, and there is nothing

14

to indicate that the Halls contended that the maps and charts submitted to FEMA did not relate to their property or that the indicated portions on those maps and charts were not relevant to the issue at hand. There is no need to "assume" that the City's evidence relates to the Halls' property; all parties apparently agreed that it did.

I further disagree with the majority opinion's implication that because the City or the "engineering firms retained by the City" submitted the information upon which FEMA based its flood-elevation conclusions, these conclusions should not be given the weight they are entitled to. Majority Op. 26–27, 28–29. Once again, I can find no indication in the record or in the appellate briefs that the Halls ever asserted that the data submitted to FEMA was anything less than accurate.[5] Indeed, in the City's submitted requests for map revisions, it states that the "effective floodplain information" submitted to FEMA was based on models prepared by the United States Army Corps of Engineers. Thus, I cannot agree with the majority opinion's attempt to discredit the City's evidence filed in support of its plea to the jurisdiction.

In any event, the City's proffered intent evidence in support of its plea to the jurisdiction established that, at the time it built the bridge, raised the road, and widened the creek bed in 2004 and 2005, it knew that the elevation levels and, thus, the likelihood of flooding were not significantly altered from what it was

_____

[5]The Halls did argue, however, that the City did not take into account general city development when it requested flood map revisions from FEMA.

before the improvements. There is no need to repeat that evidence here because the majority opinion details this evidence.[6] Majority Op. 19–28.

## VI. THE SHIFTED BURDEN ON THE HALLS

### A. THE HALLS' PROFFERED EVIDENCE REGARDING INTENT

Because the City met its burden to establish that it did not know or did not know with substantial certainty that damage would result to the Halls' property at the time the City began the project, the burden shifted to the Halls to raise a genuine issue as to whether the City knew that flooding was substantially certain by proffering objective indicia of the City's intent. *Wilson*, 168 S.W.3d at 830; *Gragg*, 151 S.W.3d at 555.

The Halls offered Kimberlee Hall's affidavit in which she admitted that the property lay within the 100-year floodplain of Big Bear Creek when she bought the property in 1985 and that occasional flooding would occur, which could rise as high as six inches. In February 1999, Kimberlee began "making inquiries with the City expressing [her] concern about growing drainage problems on the [p]roperty." On February 18, 2001, Kimberlee wrote the City a letter about "improper drainage/water run-off" resulting in repeated and damaging flooding on the property. Kimberlee "at other times" also met with "various City officials and

---

[6]I must disagree, however, with the majority opinion's assertion that the chart included on the 1982 flood map is "illegible." Majority Op. 20. The City and the Halls ensured that the record included the original exhibits filed in support of the jurisdictional briefing in the trial court. These original exhibits, specifically the chart included on the 1982 flood map, are legible.

representatives . . . and the [City's retained] engineering firm" about "[t]hese concerns." As construction began on the project, Kimberlee saw that her property was "being turned into a 'bowl' with the raised roadway of Bear Creek Parkway East immediately south of the [p]roperty, and the now significantly raised roadway of Keller-Smithfield Road South immediately west of the [p]roperty." On April 14, 2005, Kimberlee emailed the City to "make SURE that drainage is being handled. It looks like I am going to be a lake." On May 24, 2005, while construction on the project was still occurring, the City wrote Kimberlee and stated that it did not consider her concerns to implicate "potential private property storm water problems" but, instead, believed her issue related to "potential public storm water capacity or erosion problems."

Kimberlee's husband, Thomas Hall, also submitted an affidavit, but he had not moved into the house until shortly before the construction on the project began; thus, his affidavit does not relate to what the City knew at the time it planned the project. The Halls also submitted the affidavit of Frederick G. Ehler, a professional engineer and certified flood-plain manager, to "investigate the flooding which has occurred and is likely to continue to occur" to the Halls' property. The majority opinion recounts Ehler's report, and it would serve no purpose for me to restate it other than to emphasize that Ehler pointed out that FEMA's flood-insurance study for Tarrant County (which includes the City) did not consider the effects of three developments and two road-improvement projects that occurred after Kimberlee bought the property in 1985, which

17

"resulted in much more water being carried as run-off in the [Big Bear Creek] drainage basin, even in periods of relatively light rain." Ehler concluded that "in the vicinity of the Hall residence, due to recent upstream and downstream improvements and modifications to the watershed[,] it is now more likely that a storm of lower intensity will produce a flood event of higher magnitude." Majority Op. 33–35. The Halls also offered excerpts from the deposition of the director of the City's public-works department in which he stated that the purpose of raising the road as part of the project was to prevent flooding of the road.

## B. DE NOVO REVIEW

The crucial question becomes whether the Halls, through their proffered evidence, established a genuine issue as to whether the City knew that flooding to the property was substantially certain at the time it constructed the project. *See Wilson*, 168 S.W.3d at 829. As stated before, this is a heightened intent standard, requiring objective indicia of the City's intent. *Gragg*, 151 S.W.3d at 555; *State Farm*, 145 S.W.3d at 168. The trial court concluded that the Halls raised a genuine issue of material fact, which is reviewed de novo. *See Heinrich*, 284 S.W.3d at 378.

At the time of the construction of the project, the City was aware that the flood-elevation levels would not be substantially affected by the project. Ehler posited, however, that these studies, maps, and charts failed to account for development in the area, which resulted in more water run-off in the drainage basin. Before construction began, Kimberlee complained to the City and the

18

City's retained engineering firm about drainage problems on her property, which was located in the 100-year floodplain of Big Bear Creek. Kimberlee wrote the City a letter about "improper drainage/water run-off" resulting in repeated and damaging flooding on the property. Kimberlee "at other times" also met with "various City officials and representatives . . . and the [City's retained] engineering firm" about "[t]hese concerns."

I would conclude that this evidence does not provide the objective indicia that the City knew that the project would be substantially certain to cause increased flooding on the Halls' property. The Halls concede that their property lay in the floodplain and was subject to occasional flooding. Although Kimberlee complained about the drainage problems, there is nothing to connect these complaints to the project or to whether the City knew or was substantially certain that increased flooding would be the result of the project. While the Halls were diligent in reporting to the City that increased flooding occurred after the project was begun and completed, there is insufficient objective indicia that the plans for the approved project were substantially certain to increase flooding on the Halls' property. *See Wilson*, 168 S.W.3d at 830; *see also Jennings*, 142 S.W.3d at 313 (explaining accidental damage insufficient evidence of inverse condemnation). Under the heightened intent standard applicable to inverse-condemnation claims, the Halls must raise a genuine issue that the City knew that the Halls' property would be damaged or that damage was substantially certain to result from the project at the time it approved the project. *See Kerr*, 2013 WL 842652, at \*17; *cf.*

*Dallas, Garland & Ne. R.R. v. Hunt Cnty.*, 195 S.W.3d 818, 821–22 (Tex. App.—Dallas 2006, no pet.) (holding lack of evidence that municipality intended the complained-of damage justified summary judgment on inverse-condemnation claim).

In short, the Halls' proof must raise a genuine issue that when the City approved the project it knew or knew with substantial certainty that the project would cause increased and damaging flooding to the Halls' property and continued with the project anyway. *See Wilson*, 168 S.W.3d at 830 (holding plaintiffs "had to prove—not that the City *might* have disbelieved the engineers' reports, but that it *did*"); *Jennings*, 142 S.W.3d at 313 ("When damage is merely the accidental result of the government's act, there is no public benefit and the property cannot be said to be 'taken or damaged for public use.'" (citation omitted)). This the evidence does not do. The evidence before the trial court showed that the City was told that the Halls' property would not be substantially affected by the project and that Kimberlee had complained about run-off problems on her property. The City knew the Halls' property was in the floodplain and that Kimberlee had reported flooding, which the City was told would not increase with the project. The Halls failed to raise a genuine issue that the City knew more than it was told by FEMA and its retained engineering firm. *See Wilson*, 168 S.W.3d at 829. Further, none of the Halls' responsive evidence raises a genuine issue that the City knew flooding was inevitable as a result of

the project. *See id.* The Halls failed to raise a genuine issue of material fact as to the City's intent.

The Halls' theory that the City's failure to fix the recurring flooding problem after each post-project flooding incident and after the Halls repeatedly complained to the City does not operate to raise a genuine issue of material fact as to the trial court's jurisdiction. The intent element of the City's governmental immunity has a "temporal component." *Kerr*, 2013 WL 842652, at * 17. The Halls alleged that the flooding was a result of the project and surrounding development, which they supported with Ehler's opinion that the project and all cumulative upstream and downstream development increased the run-off to the Halls' property. However, the Halls' intent allegations relate solely to the project. The Halls may not move the target of when the City's intent is determined by raising what the City knew before and after each post-project flood. To do so impermissibly strays into the distorting effects of hindsight that the supreme court has expressly disavowed. *Pollock*, 284 S.W.3d at 821.

I recognize that my conclusion indicates that a governmental entity can benefit from its own willful ignorance. *See* Eliot Shavin & Chad Baruch, *Sovereign Immunity for Nuisance and Takings Claims in Texas after* City of Dallas v. Jennings, 58 SMU L. Rev. 195, 208 (2005) ("In essence, *Jennings* creates a rule by which the government's intentional ignorance immunizes it from liability under the Takings Clause."). However, there is no evidence that the City intentionally failed to conduct the appropriate studies or consult engineers before

21

embarking on the project. I am sure that in the appropriate case, it could be found that a property owner raised a genuine issue on an entity's intent based on its willful failure to consult experts before beginning a project for the benefit of the public. *Cf. Wilson*, 168 S.W.3d at 829 ("None of the evidence . . . showed the City knew more than it was told by the engineers. The [Plaintiffs'] expert testified that flooding was (in his opinion) inevitable, but not that *the City* knew it was inevitable.").

## VII. CONCLUSION

I believe the Halls failed to meet the heightened standard applicable to the City's intent and, therefore, did not raise a genuine issue of material fact regarding what the City knew at the time of the project sufficient to invoke the trial court's jurisdiction. As such, the trial court erred by denying the City's plea to the jurisdiction. I would reverse and remand to the trial court for entry of an order granting the City's plea.

LEE GABRIEL
JUSTICE

DELIVERED: May 1, 2014

22