**PLANO SURGERY CENTER,**
Appellant,

v.

**NEW YOU WEIGHT MANAGEMENT CENTER, Appellee.**

No. 05–07–00018–CV.

Court of Appeals of Texas, Dallas.

June 25, 2008.

Rehearing Overruled Oct. 28, 2008.

P. Michael Jung, Strasburger & Price, L.L.P., Charles Sartain, Andrew K. York, Looper, Reed & McGraw, P.C., Dallas, TX, for Appellant.

Geoffrey S. Harper, Fish & Richardson, P.C., Dallas, TX, for Appellee.

Before Justices FITZGERALD, LANG–MIERS, and MAZZANT.

## OPINION

Opinion By Justice AMOS L. MAZZANT.

This case involves a marketing agreement between Plano Surgery Center

(PSC) and New You Weight Management Center (New You). The trial court found the agreement was legal and enforceable and, following a jury trial, the court rendered judgment that PSC was liable to New You for actual damages for breach of contract and negligent misrepresentation, exemplary damages for negligent misrepresentation, plus prejudgment interest and attorney's fees. PSC brings three issues asserting (1) its agreement with New You was illegal and unenforceable, either on its face or as performed by the parties; (2) New You failed to prove an actionable negligent misrepresentation; and (3) there was no evidence of malice to support the award of exemplary damages. We reverse and render in part, remand in part, and affirm in part.

## BACKGROUND

Laparoscopic gastric banding (lap-band) is a surgical procedure designed to assist obese people in losing weight. Before lap-band surgeries were approved by the FDA to be performed in the United States, New You provided maintenance services[1] for people who had the surgery in foreign countries. After lap-band surgeries were approved in this country, New You desired to form a partnership with an ambulatory surgical center to perform the surgery. New You contacted PSC, which expressed interest in having lap-band surgeries performed in its facility. On August 22, 2002, the parties negotiated an interim agreement in the form of a letter of intent, which, according to its terms, was to expire on the earlier of either February 28, 2003 or the date the parties signed a permanent agreement. The parties never reached a permanent agreement, and the letter of intent was their only contract.

### The Agreement

That letter-of-intent agreement stated PSC was "interested in developing an on-going relationship with 'New You' in weight loss surgical procedures to which New You has intimate knowledge of the procedures and assisting [PSC] in the completion of the successful venture." The letter of intent stated that the parties desired to negotiate "a definitive written agreement to govern the on going relationship." The letter of intent then described the "Marketing Agreement" that would be part of that "definitive agreement." Under that marketing agreement, PSC would manage the day-to-day operations of the surgical center and handle billing and collecting for the surgeries. PSC would receive up to four percent of the "Net Collections" per month as a management fee. The agreement also provided that "[i]n consideration for the Marketing services that 'New You' will provide," the "Net Cash" from the weight-loss surgical services would be divided 66.66 percent to New You and 33.33 to PSC. The letter of intent did not define the terms "Net Collections" or "Net Cash," and it did not detail the management responsibilities of PSC or the marketing services of New You. The parties stipulated that the "Marketing Agreement" described in the letter of intent was the contract under which they operated.

### The Performance of the Agreement

In performing under the agreement, New You recruited surgeons and assisted in their training in the relatively new procedure of lap-band surgery. New You obtained patients for lap-band surgery through its marketing activities. New You ran radio, internet, and print advertisements providing a telephone number for

---

1. The bands contained saline. As the patient lost weight, the amount of saline in the band had to be adjusted to maintain the correct tension around the stomach.

people to call. Those expressing interest were directed to a seminar where the surgery was discussed by New You's employees as well as by surgeons it recruited. Those attending the seminars who desired to have the surgery provided medical and financial information to New You. New You would then refer the prospective patient and send the medical information to a surgeon it recommended. New You's employees provided counseling for the patient before and after the surgery, and they met with the patient's family during the surgery.

PSC provided the facilities, materials and supplies, and nursing personnel for the surgery, and it took care of billing and collecting from the patients' health insurers.

The pool of money to be divided between PSC and New You was determined for each patient. From the total amount of money collected for each lap-band surgery, PSC subtracted the cost of the supplies for the surgery, the cost of the nurses, and fixed amounts for the use of PSC's facilities and insurance costs. The difference was the "Profit" from which PSC subtracted its four percent management fee, which yielded the "Adjusted Profit." This "Adjusted Profit" was divided 33.33 percent to PSC and 66.67 percent to New You.

In late 2002, PSC flooded and was unusable for several weeks. Surgeries scheduled to be performed at PSC were moved to the Medical Arts surgical center. New You's chief executive and its director of operations testified they were told by PSC's executive director that Medical Arts was owned by the same doctors as PSC and that the parties' profit-sharing arrangement would apply to the surgeries performed at Medical Arts due to the flood.

## The Dispute and Litigation

In January 2003, with the termination date of February 28, 2003 approaching, Leonard Platt, the director of operations for New You, contacted PSC about holding a meeting to discuss the parties' future relationship. On January 29, 2003, Platt and an attorney for New You met with Michael Kincaid, the executive director of PSC, and with PSC's attorney. At that meeting, the lawyers expressed concern about the legality of the relationship under the letter of intent. They discussed possible alternative arrangements, including New You becoming a part owner of PSC and New You leasing time at PSC's surgical facilities. The meeting ended without the parties reaching any agreement.

After the meeting, PSC sent New You a series of letters and communications stating the letter of intent agreement was canceled as of January 29, 2003, that PSC would pay New You according to the letter of intent for surgeries through January 29 and would pay New You's marketing costs incurred thereafter. Platt testified that after each of those communications, Kincaid told Platt that the letters and emails were "legalese," and Kincaid assured Platt that there was no change in the parties' relationship. On July 29, 2003, after PSC had failed to pay New You the amount to which New You thought it was entitled, New You declared the relationship ended and had the surgeries performed at another surgical center.

New You subsequently sued PSC for breach of contract, quantum meruit, money had and received, promissory estoppel, negligent misrepresentation, and fraud. PSC asserted that the contract was unenforceable because it was illegal and violated public policy. PSC moved for summary judgment on the ground that the contract was illegal, but the trial court denied that motion. The case proceeded to a jury

trial, and the jury found that the contract extended beyond January 29, 2003 and that PSC breached the contract, made a negligent misrepresentation, and committed fraud. The jury found damages of $197,944.56 for breach of contract, $141,808.87 for negligent misrepresentation, and $216,000 for fraud. The jury found the negligent misrepresentation was made with malice but that the fraud was not made with malice. The jury also awarded $432,000 for exemplary damages for the negligent misrepresentation claim. The trial court rendered judgment for New You and awarded the actual damages found by the jury on the breach of contract and negligent misrepresentation claims, exemplary damages of $283,617.74, attorney's fees through trial of $110,439.50 and additional amounts in the event of an appeal, and prejudgment and postjudgment interest.

## LEGALITY OF THE CONTRACT

In its first issue, PSC asserts the trial court erred in rendering judgment for New You on the letter-of-intent agreement because the parties' profit-sharing arrangement violated chapter 102 of the Texas Occupations Code, making the arrangement illegal and unenforceable.

Section 102.001(a) of the Texas Occupations Code provides,

A person commits an offense if the person knowingly offers to pay or agrees to accept, directly or indirectly, overtly or covertly any remuneration in cash or in kind to or from another for securing or soliciting a patient or patronage for or from a person licensed, certified, or registered by a state health care regulatory agency.

TEX. OCC. CODE ANN. § 102.001(a) (Vernon 2004). Violation of section 102.001 is a class A misdemeanor or a third degree felony depending on the circumstances. *See id.* § 102.001(b), (c). Section 102.001 contains an exception for advertising, section 102.004,

Section 102.001 does not prohibit advertising, unless the advertising is:

(1) false, misleading, or deceptive; or

(2) not readily subject to verification, if the advertising claims professional superiority or the performance of a professional service in a superior manner.

*Id.* § 102.004.

▇▇▇ "A contract to do a thing which cannot be performed without a violation of the law is void." *Lewis v. Davis,* 145 Tex. 468, 472, 199 S.W.2d 146, 148–49 (1947) (quoting *Tex. Employers' Ins. Ass'n v. Tabor,* 283 S.W. 779, 780 (Tex.Com.App.1926, judgm't adopted)). "[O]ur courts will neither aid in the enforcement of an illegal executory contract, nor relieve from an illegal contract, a party who has executed it." *Morrison v. City of Fort Worth,* 138 Tex. 10, 14, 155 S.W.2d 908, 909 (1941). "The general rule that denies relief to a party to an illegal contract is expressed in the maxim, In pari delicto portior est conditio defendantis." [2] *Lewis,* 145 Tex. at 477, 199 S.W.2d at 151. When the illegality does not appear on the face of the contract, it will not be held illegal and thus void unless the facts showing its illegality are before the court. *Id.* at 472, 199 S.W.2d at 149; *see also Franklin v. Jackson,* 847 S.W.2d 306, 310 (Tex.App.–El Paso 1992, writ denied) (citing *Lewis* ). Illegality is an affirmative defense, and the burden is on the defendant to plead and

**2.** In a case of mutual fault, the condition of the party defending is the better one. *See* BLACK'S LAW DICTIONARY 898 (4th ed.1968).

prove the illegality. TEX.R. CIV. P. 94; *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 22 (Tex.App.–Dallas 1988, writ denied).

█ In this case, the letter of intent is not facially illegal. It calls for New You to provide "marketing services" for which it would receive 66.66 percent of "net cash." Neither "marketing services" nor "net cash" is defined in the agreement. The agreement could be performed lawfully by PSC paying New You 66.66 percent of "net cash" for "marketing services" not involving the securing or soliciting of patients other than through advertising permitted by section 102.004.

█ PSC also argues the evidence presented in the trial includes facts showing the parties' agreement as performed by the parties was prohibited by section 102.001. No questions were submitted to the jury concerning PSC's affirmative defense of illegality of the parties' performance of the agreement. PSC did not request any jury questions on the legality of the parties' performance of the agreement or object to the absence of any such questions. Rule of civil procedure 279 provides in relevant part, "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." TEX.R. CIV. P. 279; *see Solares v. Solares*, 232 S.W.3d 873, 882–83 (Tex.App.–Dallas 2007, no pet.); *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 816 (Tex.App.–Dallas 2003, pet. denied). At trial, the illegality of the parties' performance of the agreement was not conclusively established.

The parties presented conflicting evidence of whether New You received remuneration for securing patients and, if so, whether its services constituted "advertising," which would be excepted from section 102.001. Accordingly, pursuant to rule 279, we conclude PSC's defense of the illegality of the contract as performed was waived.[3]

We overrule PSC's first issue.

## NEGLIGENT MISREPRESENTATION

█ In its second issue, PSC asserts New You cannot recover on its negligent misrepresentation cause of action. The elements of a negligent misrepresentation cause of action are:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest;

(2) the defendant supplies "false information" for the guidance of others in their business;

(3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

(4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991); *Prospect High Income Fund v. Grant Thornton, LLP*, 203 S.W.3d 602, 614 (Tex.App.–Dallas 2006, pet. denied).

█ PSC argues that New You cannot recover in tort because it did not suffer an injury from a negligent misrepresentation independent of its damages for breach of contract.[4] When a party's claim could

---

**3.** New You argues that illegality of performance of a facially legal contract is not a valid defense to breach of contract. Because we conclude the defense, if it exists, was waived, we do not reach the issue of whether the defense is valid.

**4.** PSC objected to the submission of the jury questions on negligent misrepresentation, arguing there was no evidence of independent injury as a result of the misrepresentation and no evidence of out-of-pocket damages from the misrepresentation.

validly sound in both tort and contract, there must be an injury independent of damages for breach of contract for New You to recover on its negligent misrepresentation claim. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663–64 (Tex.1998); *Blue Star Operating Co. v. Tetra Tech., Inc.,* 119 S.W.3d 916, 922 (Tex.App.–Dallas 2003, pet. denied). "Repudiating the independent injury requirement for negligent misrepresentation claims would potentially convert every contract interpretation dispute into a negligent misrepresentation claim." *D.S.A., Inc.,* 973 S.W.2d at 664. The burden is on the plaintiff claiming negligent misrepresentation to provide evidence of this independent injury. *Id.* at 664.

New You's negligent misrepresentation claims were tried by consent.[5] New You asserts PSC made three negligent misrepresentations: (1) that the surgeries performed after the cancellation of the contract on January 29, 2003 would be compensated under the profit-sharing agreement; (2) that the surgeries performed at Medical Arts during the time PSC was unusable due to the flood would be compensated under the profit sharing agreement;[6] and (3) that PSC was committed to a joint venture between the parties.

■ Concerning the first misrepresentation, the trial court submitted to the jury the issue of whether the parties had a marketing agreement after January 29, 2003. The jury found "New You and Plano Surgery Center had a marketing contract after January 29, 2003." Thus, any injury New You suffered from a representation that New You would be compensated under the profit-sharing agreement for the post-January 29, 2003 surgeries was not independent of its damages for breach of that contract.

■ As for the second misrepresentation, that New You would be compensated under the profit-sharing agreement for the surgeries performed at Medical Arts due to the flood at PSC, New You's injury from this misrepresentation is not independent of New You's damages for breach of contract. New You's breach of contract claim alleged, "New You had an oral contract claim with PSC whereby PSC agreed to compensate New You for marketing and advertising services.... PSC breached the contract by refusing to pay New You monies rightfully due under the contract. As a result of PSC's actions, New You has suffered damages...." At trial, New You's evidence of negligent misrepresentation also constituted proof of an oral unilateral contract. A unilateral contract is created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs. *See Light v. Centel Cellular of Tex., Inc.,* 883 S.W.2d 642, 645 n. 6 (Tex.1994); *Vanegas v. Am. Energy Servs.,* 224 S.W.3d 544, 549 (Tex.App.–Eastland 2007, pet. grant-

---

5. In its live pleading, the only negligent misrepresentation New You alleged was, "PSC made a representation to Plaintiff in the course of PSC's business or in a transaction in which PSC had an interest—namely, a promise to pay Plaintiff a fee for advertising and marketing the surgical services of PSC." It does not appear that New You asserted this alleged misrepresentation during the trial or on appeal.

6. Because of the flood at PSC, surgeries were performed at Medical Arts and at another facility in College Station. In its brief on appeal, New You asserts it is entitled to compensation for the surgeries performed in College Station, but it fails to cite to any evidence in support of this. Not only is there no evidence to support New You's assertion of entitlement to compensation for the College Station surgeries, but Platt testified he "was not suggesting" that PSC "owes money for" the College Station surgeries.

ed); *Dodson v. Stevens Transport,* 776 S.W.2d 800, 805 (Tex.App.–Dallas 1989, no writ). In this case, PSC promised to pay New You under the profit-sharing agreement for lap-band surgeries carried out at Medical Arts during the period PSC was unusable due to the flood, and New You performed by having the operations performed at Medical Arts, thus binding PSC to provide the promised benefit. Thus, New You's negligent misrepresentation claim for compensation for the surgeries at Medical Arts falls under its pleaded breach of contract claim, and any injury due to the negligent misrepresentation is not independent of the damages for breach of contract.

■■■ New You also asserts it is entitled to damages for PSC's negligent misrepresentation that it was committed to a joint venture between the parties. New You argues the facts of this case are analogous to those before this Court in *Shell Oil Products Co. v. Main Street Ventures, L.L.C.,* 90 S.W.3d 375 (Tex.App.–Dallas 2002, pet. dism'd by agr.). In that case, the plaintiff began development of a filling station with a fast-food court. Shell visited the location while it was under construction and told the plaintiff that Shell wanted to form a joint venture with the plaintiff for the development of many such locations. Shell encouraged the plaintiff to devote its existing resources to an aggressive growth plan. The plaintiff rejected offers of outside financing based upon Shell's instructions. *Id.* at 379. Meanwhile, the parties continued to negotiate the details of the joint venture. Based on Shell's representations regarding its commitment to the joint venture project and the speed with which Shell wanted to develop new sites, the plaintiff purchased franchises, incurred architectural and design expenses, and began franchise training and management staffing. When the plaintiff's funding was exhausted, it requested that Shell contribute cash so that development could continue. Shell contributed cash at first. However, after Shell reviewed the financial data from two of the stores, Shell told the plaintiff it would not advance any more funds. The joint venture agreement was never completed, and the plaintiff soon closed its stores. The plaintiff sued Shell for, among other causes, negligent misrepresentation alleging Shell destroyed its business. *Id.* at 380. This Court determined that the plaintiff alleged damages that were not solely the failure to create the joint venture but were suffered in reliance on Shell's representations, including the money the plaintiff spent toward the joint venture, the third-party financing the plaintiff refused, and debts the plaintiff was unable to pay as a result of relying on Shell's representations. *Id.* at 381. In *Shell Oil Products Co.,* we did not equate the promises and representations of which the plaintiff complained to a promise to perform a contractual obligation. *Id.* at 382. In this case, however, the promises and representations of which New You complained were promises to perform contractual obligations. We conclude *Shell Oil Products Co.* is distinguishable.

Any misrepresentation to New You of PSC's commitment to a joint venture would have related solely to PSC's performance under the parties' agreements. Thus, any injury suffered by New You from a representation that PSC was committed to a joint venture with New You was not independent of New You's damages for breach of contract.

■■■ New You also argues the jury found an independent injury because it awarded damages for both breach of contract and negligent misrepresentation. We disagree. The jury was instructed that it could award overlapping damages:

If you find that Plano Surgery Center is liable, you must award the amount that you find by a preponderance of the evidence to be full and just compensation for New You's damages. If you answer questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of the instructions in or your answer to any other questions about damages. . . .

You should consider the amount of damages, if any, as to each claim separately and independently from the amount of damages, if any, you might award under any other claim brought by the plaintiff. Do not concern yourself with whether New You would recover two times from the same injury.

In light of these instructions, we cannot infer an independent injury from the jury's award of damages for both breach of contract and negligent misrepresentation, particularly when, as in this case, the damages for negligent misrepresentation are less than the damages for breach of contract.

New You argues it is entitled to recover damages for both breach of contract and negligent misrepresentation, citing three cases in which the plaintiffs recovered both contractual and tort damages. *See Valley Nissan, Inc. v. Davila,* 133 S.W.3d 702 (Tex.App.–Corpus Christi 2003, no pet.); *Tristan v. C.A. Walker, Inc.,* No. 13–01–00410–CV, 2003 WL 21212342 (Tex.App.–Corpus Christi May 27, 2003, pet. denied) (mem. op.); *Nat'l Am. Ins. Co. v. Thompson,* No. 06–00–00111–CV, 2001 WL 521913 (Tex.App.–Texarkana May 17, 2001, pet. denied) (not designated for publication). However, in each of the cited cases, the plaintiff's damages in tort were from an injury independent of its breach of contract claim.

In *Valley Nissan, Inc.,* the plaintiff wanted to purchase a vehicle from the defendant car dealer. *Valley Nissan, Inc.,* 133 S.W.3d at 706. When the dealer told the plaintiff she qualified for financing, the plaintiff traded in her old vehicle and purchased the new one. Later, the dealer told the plaintiff to bring the new vehicle back to the dealership because she had not been approved for financing. The plaintiff was then told she could not leave with the new vehicle until she gave an additional down payment, qualified for new financing, or obtained a co-signor. *Id.* The dealer breached the contract to sell the plaintiff the new vehicle, damaging appellant by the value of the vehicle. *Id.* at 714. The plaintiff suffered the tort of negligent misrepresentation when she traded in her old vehicle in reliance on the dealer's representation to provide the plaintiff with the new vehicle and financing. *Id.* at 715. The court concluded the tort claim was independent of the breach of contract claim. *Id.* In *Tristan,* a memorandum opinion, the court merely observed, "the two theories of liability arose from separate injuries," and a different measure of damages was submitted to the jury for each claim. *Tristan,* 2003 WL 21212342, at *2. In *National American Insurance Co.,*[7] the plaintiff was involved in a bail-bond business partnership in which the defendant was the insurer. *Nat'l Am. Ins. Co.,* 2001 WL 521913, at *1. As an agent of the defendant, the plaintiff was required by his contract with the defendant to contribute to a build-up fund to protect the defendant from any losses for bond forfeitures. The plaintiff contributed $147,000 to the build-up fund, and the defendant never suffered any losses due to the plaintiff's bonds. The contract required the defendant to return the plaintiff's unused

---

7. *National Insurance Co.* was not designated for publication and has no precedential value.

*See* Tex.R.App. P. 47.7. However, in the interest of justice, we will consider the case.

contributions to the build-up fund after termination of the plaintiff's bail-bond powers. The plaintiff also contributed $108,000 in startup costs for the bail-bond business, but this payment was not part of any contract with the defendant. *Id.* It appears from the opinion that this startup money made its way into the defendant's possession. The plaintiff's partners agreed to buy out the plaintiff by returning his $108,000 in startup funds; the plaintiff agreed, and the defendant cancelled the plaintiff's bail-bond powers. *Id.* at *2. The plaintiff sued the defendant for causes of action including breach of contract and unjust enrichment. *Id.* The plaintiff alleged the defendant breached the contract by not returning the $147,000 he contributed to the build-up fund, and he alleged the defendant was unjustly enriched by its retaining the $108,000 in startup funds. *Id.* at *3, 7. As the court of appeals observed, "These are separate injuries, with separate monetary damages." *Id.* at *7. All three of these cases are distinguishable because they involved tort injuries independent of the damages for breach of contract, but New You's injury from PSC's negligent misrepresentations was not independent of New You's damages from PSC's breach of contract.

■ The lack of independent injury is also shown by New You's evidence of damages. Under a negligent misrepresentation cause of action, the plaintiff cannot recover benefit-of-the-bargain damages. The plaintiff's damages are limited to out-of-pocket damages. *D.S.A., Inc.,* 973 S.W.2d at 663–64; *Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442–43 (Tex. 1991). Lost profits are not out-of-pocket

damages. *Formosa Plastic Corp. USA v. Presidio Engrs. & Contractors, Inc.,* 960 S.W.2d 41, 49–50 (Tex.1998); *Metro. Life Ins. Co. v. Haney,* 987 S.W.2d 236, 246 (Tex.App.–Houston [14th Dist.] 1999, pet. denied). In *D.S.A., Inc.,* the supreme court held the plaintiff was not entitled to any recovery under negligent misrepresentation because it did not attempt any distinction between its out-of-pocket damages and the benefit of the bargain. *D.S.A., Inc.,* 973 S.W.2d at 664. In this case, all of New You's damages evidence concerned the amount it was entitled to recover under the profit-sharing agreement, i.e., what was the benefit of the bargain. The only evidence of New You's out-of-pocket expenses was Platt's testimony that New You spent $50,000 on a radio advertising campaign and that $58,659.58 was "probably not a fourth" of New You's marketing expenses "over time." However, New You presented no evidence showing what amount, if any, of these marketing expenses was incurred in justifiable reliance on PSC's negligent misrepresentations.[8]

We conclude New You did not suffer an injury from a negligent misrepresentation independent of its damages for breach of contract. Accordingly, New You cannot recover on its negligent misrepresentation claim. *See D.S.A., Inc.,* 973 S.W.2d at 663–64; *Blue Star Operating Co.,* 119 S.W.3d at 922. We sustain PSC's second issue.

**EXEMPLARY DAMAGES**

■ In its third issue, PSC asserts the exemplary damages award cannot stand. The award of exemplary damages was based on the jury's findings that PSC's

---

8. The record indicates the trial court, in an order on a motion in limine, excluded New You's evidence of out-of-pocket damages. The motion and order are not in the record, but when New You tried to introduce evidence of its marketing expenses, PSC objected, referencing the order on the motion in limine. The trial court sustained the objection.

negligent misrepresentation was made with malice and that $432,000 should be assessed in exemplary damages and awarded to New You for the negligent misrepresentations made with malice. Having concluded New You did not prove its negligent misrepresentation claim, we further conclude the award of exemplary damages for negligent misrepresentation cannot stand. *See Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 304 (Tex. 2006). We sustain PSC's third issue.

## CONCLUSION

We reverse the portion of the trial court's judgment awarding New You actual and exemplary damages and prejudgment interest on those damages for negligent misrepresentation, and we render judgment that New You take nothing on its claim for negligent misrepresentation. We affirm the trial court's judgment awarding New You damages and attorney's fees on its claim for breach of contract. We remand the cause to the trial court for recalculation of the award of prejudgment interest on the actual damages of $197,944.56 for breach of contract.