

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00186-CV

CACTUS WELL SERVICE, INC.                                      APPELLANT

V.

ENERGICO PRODUCTION, INC.                                      APPELLEE

----------

### FROM THE 43RD DISTRICT COURT OF PARKER COUNTY
### TRIAL COURT NO. CV07-2700

----------

## MEMORANDUM OPINION[1]

----------

Appellant Cactus Well Service, Inc. appeals from the trial court's final judgment awarding negligent-misrepresentation damages to appellee Energico Production, Inc. Because we conclude that the independent-injury rule barred Energico's recovery for negligent misrepresentation and that legally sufficient evidence supported the jury's damage finding on Cactus's counterclaim, we

---
[1]*See* Tex. R. App. P. 47.4.

reverse the trial court's judgment in favor of Energico and render judgment for Cactus on its counterclaim.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

In 2006, Stephen Knight bought Energico, which held the leases to 1,600 mineral acres in Terrell County. One of the leases was located on the Slaughter Ranch 63 site (the site). Before Knight bought Energico, a geologist had determined that natural gas appeared to be present at the site at a depth of 12,500 feet. To raise the money needed to drill at the site, Knight brought on several investors, one of whom hired Roger Neal, an engineer, to advise Energico in the drilling venture. Neal assessed the risk and commercial quality of the site and concluded that there was "a very good chance" that the site would be productive.

Energico hired Nabors Drilling USA, which began drilling at the site on November 23, 2006. After 101 days of drilling, Nabors had drilled to a depth of 12,180 feet and had discovered that the well was not commercially viable at that depth. Because Energico believed Nabors's fee was too high—$21,000 per day—Energico decided to find a less expensive drilling company to take the well deeper.

In April 2007, Energico hired Cactus to continue the drilling because Cactus represented that its rig could drill to a depth of 13,000 feet—an additional 820 feet—and because Cactus would charge only $9,000 per day. Energico's

2

oral contract with Cactus was on a day-work basis, which meant Cactus would provide the drilling rig and the crew and Energico would place an employee on site to direct Cactus's work. Under the contract, Cactus was not obligated to drill to a certain depth, and Energico was responsible for providing Cactus with the appropriate pipe to use in the drilling. Energico ordered new P-110 grade pipe from Seminole Oilfield Supply, Inc. Seminole, unbeknownst to Energico, provided used N-80 pipe, which Seminole had purchased from Tadlock Pipe Rentals, Inc. The used N-80 pipe was delivered directly to the site, and Energico's employee informed Cactus that the pipe was P-110 pipe.

Cactus deepened the well an additional 294 feet to a depth of 12,474 feet. On May 5, 2007, Cactus was pulling the pipe up out of the well to change the drill bit when the pipe separated and fell to the bottom of the well. Although it was undisputed that the well was damaged as a result of the pipe separating, Energico and Cactus disagreed as to the cause of the separation. Energico claimed the condition of Cactus's rig caused the pipe to separate:

> [T]he Cactus [r]ig, which had key parts in 'deplorable' condition, with a worn bearing in the support arm, caused the wire rope to walk off the sheave, fall down the support arm/hub, and drop the pipe. The dynamic force caused the pipe to separate. As had happened before, the rope walked off the sheave, dropped the rope and attached pipe, and came to a violent stop causing the pipe to separate – in that order. Following the [r]ig failure and subsequent pipe separation, the bottom 8476 feet of pipe fell to the bottom of the [w]ell.

[Footnotes omitted.] Cactus focused on the condition of the pipe supplied by Energico:

3

[O]ne of the sections of [pipe supplied by Energico] had a fatigue fracture on 44% of the surface of one of the threaded male ends. . . .

. . . .

. . . [W]hile Cactus was [raising the drill bit], one of the sections of [pipe] broke loose from the joint to which it was attached at a depth of 4,400 feet. . . . This caused everything below that joint on the drill string to fall to the bottom of the [w]ell.

[Footnote omitted.] In any event, the rig was not operational after the pipe separated and fell to the bottom of the well. Once Cactus repaired the rig, which took approximately three days, it was able to pull some of the pipe out of the well. About four days later, Energico told Cactus to leave the site and remove the rig. Cactus billed Energico $215,830.57 for the services it rendered at the site; however, Energico did not pay.

Energico, believing that the well would become commercially productive if drilled 100 feet deeper, then attempted to salvage the well. First, it tried to fish the pipe out of the well, which involved lowering a tool into the well to pull out the lost equipment. The fishing was mostly unsuccessful. Energico then tried to sidetrack the obstructed portion of the well, which involved setting a pressure-sealing device into the well and drilling a secondary wellbore off to the side of the existing wellbore to bypass the unusable area of the existing wellbore. The sidetracking failed. Energico then plugged and abandoned the well. The total cost of these salvage attempts was $2,150,800, and Energico's total expenditures on the well before it was plugged were $8,863,000. Energico's

4

investors declined to drill on any of Energico's leases; thus, the leases expired and Energico went out of business.

## B. PROCEDURAL BACKGROUND

### 1. Pretrial and Trial

On November 28, 2007, Energico filed suit against Cactus, Seminole, and Tadlock. Against Cactus, Energico raised claims for breach of contract, negligent misrepresentation, and negligence and sought a declaratory judgment "for construction of the duties under the Contract, and for a declaration that this incident was the fault of Cactus." Energico raised claims for breach of contract and violations of the Deceptive Trade Practices Act against Seminole and Tadlock. Cactus filed a counterclaim against Energico seeking payment for rendered services through claims for breach of contract, negligent misrepresentation, negligence, suit on account, and quantum meruit. *See* Tex. R. Civ. P. 97(a), 185. In its counterclaim, Cactus alleged that it was owed $217,933.07 for services rendered at the site.

Energico settled with Tadlock and Seminole, and the trial court entered take-nothing judgments on Energico's claims against Tadlock and Seminole. After a trial on Energico's and Cactus's claims, the jury unanimously found that Cactus breached its contract with Energico, made a negligent misrepresentation, and was negligent. Although the jury found that the value of the well immediately before the pipe separated was zero, it awarded Energico (1) $2,150,800 on each of its breach-of-contract, negligent-misrepresentation, and negligence claims for

5

the expenses Energico incurred in attempting to salvage the well and (2) $1,080,000 on the same claims for the cost of drilling a replacement well minus the salvage value of the well. The jury also found that Energico breached its agreement to pay Cactus for its services and awarded Cactus $215,830.57.[2] The jury found that neither Cactus's nor Energico's actions were excused.

## 2. Posttrial

Energico moved for entry of judgment on the claim it considered to be its "most favorable theory of recovery"—negligent misrepresentation. Energico also asserted that "Cactus should not be granted judgment on its counterclaim as there was a jury finding . . . that Cactus breached the contract[, which] was not excused." It further argued that Cactus had failed to prove that its unpaid charges were reasonable and necessary.

Cactus moved for entry of a take-nothing judgment on Energico's negligent-misrepresentation claim because Energico solely sought contractual damages. Cactus also moved for judgment on its breach-of-contract claim. The trial court issued a letter ruling denying Cactus's motion for take-nothing judgment and rendered "a Final Judgment for . . . Energico . . . of $2,150,800.00 plus prejudgment interest less $215,830.57 plus prejudgment interest, less settlement credits of $912,000.00 to the Plaintiff[]."

---

[2]The trial court included only Cactus's breach-of-contract claim in the jury charge.

6

Cactus sought a reconsideration of the letter ruling, again asserting that the awarded damages were not recoverable for negligent misrepresentation. Energico filed an amended motion for entry of judgment, again electing to recover under its negligent-misrepresentation claim, seeking "no judgment" on Cactus's counterclaim, and objecting to the settlement credit. Cactus additionally filed a cross-motion for a take-nothing judgment and for entry of judgment. In response, Energico again asserted that Cactus's previous breach as found by the jury foreclosed any judgment in favor of Cactus on its counterclaim. On February 27, 2013, the trial court denied these motions and signed a final judgment awarding Energico $2,150,800 "based on its negligent misrepresentation claim . . . to which settlement credits in the amount of $912,000.00 are applied . . . and a credit for the counterclaim verdict is applied, resulting in a net judgment amount of $1,023,969.43." Cactus filed a motion for new trial, which was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). Both Energico and Cactus filed notices of appeal.

## II. INDEPENDENT INJURY

In its second issue, Cactus asserts that the independent-injury rule[3] bars Energico's recovery for its negligent-misrepresentation claim. Energico responds

---

[3]It has been suggested, and we agree, that although this rule is alternately referred to as the economic-loss rule, it is more appropriate to refer to it as the independent-injury rule, especially in the context of potential tort recovery of economic damages between contractual parties. *See Eastman Chem. Co. v. Niro, Inc.*, 80 F. Supp. 2d 712, 716 n.2 (S.D. Tex. 2000); *see also Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011).

7

that it may recover on its negligent-misrepresentation claim because the awarded damages were mitigation damages.

The independent-injury rule provides that when claims for both negligent misrepresentation and breach of contract arise out of the same facts, the plaintiff may recover for negligent misrepresentation only upon showing that it suffered damages as a result of the alleged misrepresentation that were independent of any benefit-of-the-bargain damages resulting from the breach of contract. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998) (op. on reh'g) (citing Restatement (Second) of Torts § 552B (1977)); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991); *see also Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 301–02 (Tex. App.—Dallas 2009, no pet.) (recognizing independent-injury rule applied to bar negligent-misrepresentation claim). In short, if a plaintiff cannot establish an independent injury—a loss that is independent or different from that recoverable under breach of contract—its recovery for negligent misrepresentation is barred. *D.S.A.*, 973 S.W.3d at 663; *Esty*, 298 S.W.3d at 301–02; *Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 503 (Tex. App.—Dallas 2008, no pet.).

To determine whether there was an independent injury authorizing a recovery for negligent misrepresentation, we consider (1) the source of Cactus's duty to act and (2) the nature of Energico's loss. *See DeLanney*, 809 S.W.2d at 494–95. First, if Cactus's duty to act arose solely under an agreement between it and Energico, any breach of that duty does not give rise to an independent injury.

8

*See id.* at 494–95 & n.2; *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). Second, "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter*, 711 S.W.2d at 618.

Cactus's duty was solely a product of its oral contract with Energico. As found by the jury, Cactus breached its contract "to deepen the [w]ell, on a day-work basis, through additional drilling, using . . . drill pipe provided by Energico." Without more than this found malfeasance under the contract, Energico cannot recover for negligent misrepresentation. *See LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 246–50 (Tex. 2014); *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14–15 (Tex. 1996); *cf. Sharyland*, 354 S.W.3d at 420 ("Construction defect cases, however, usually involve parties in a contractual chain who have had the opportunity to allocate risk, unlike the situation faced by Sharyland."); *Grant Thornton L.L.P. v. Prospect High Income Fund*, 314 S.W.3d 913, 917–20 (Tex. 2010) (holding auditors under contract with timeshare operator could be liable to *third-party* investor with special relationship to audited corporation for negligent misrepresentation in audit report).

Further, the nature of Energico's loss solely was economic loss to the subject of the contract itself, i.e., the well. *See LAN/STV*, 435 S.W.3d at 242 & n.35; *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 61 (Tex. 2008); *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *accord Greco v. Jones*, No. 3:13-CV-1005-M, 2014

9

WL 3855322, at *5 (N.D. Tex. Aug. 6, 2014); *cf. Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 57 Tex. Sup. Ct. J. 1264, 2014 WL 4116839, at *2 (Aug. 22, 2014) ("The plumber's duty not to flood or otherwise damage the house is independent of any obligation undertaken in its plumbing subcontract with the builder, and the damages allegedly caused by the breach of that duty extend beyond the economic loss of any anticipated benefit under the plumbing contract."). Energico asserts that its negligent-misrepresentation damages were out-of-pocket mitigation damages and, thus, were separate from the benefit-of-the-bargain damages the jury awarded for breach of contract. Energico argues that the benefit-of-the-bargain damages sought through its breach-of-contract claim were the costs to re-drill the well to the depth at which the failure occurred "less salvage value of the ruined well and the cost of the lost leases"; however, Energico contends its out-of-pocket damages sought in its negligent-misrepresentation claim were "the costs to fish, sidetrack, plug, and abandon the [w]ell." But at trial, even Energico's counsel argued to the jury that Energico's damages for breach of contract and negligent misrepresentation were "the same" and asked the jury to answer the damages questions for breach of contract and negligent misrepresentation with the same number. The nature of the damages Energico requested under either claim were identical and sought the costs of bringing the well up to the bargained-for standard, i.e., the benefit of the bargain. *See D.S.A.*, 973 S.W.2d at 664; *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797–98 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Benefit-of-the-

10

bargain damages are not available for a claim of negligent misrepresentation under these facts. *See Esty*, 298 S.W.3d at 302; *Plano Surgery*, 265 S.W.3d at 506.

Thus, the independent-injury rule barred Energico's recovery for negligent misrepresentation. Because Energico specifically elected postverdict to recover solely for negligent misrepresentation, we sustain Cactus's second issue, reverse the trial court's judgment awarding Energico negligent-misrepresentation damages, and render a take-nothing judgment. *See Carrico v. Kondos*, 111 S.W.3d 582, 585–86 (Tex. App.—Fort Worth 2003, pet. denied) (discussing preclusive effect of election of remedies); *City of Glenn Heights v. Sheffield Dev. Co.*, 55 S.W.3d 158, 164–66 (Tex. App.—Dallas 2001, pet. denied) (same). We need not address Cactus's remaining two issues arguing that the evidence was insufficient to support the jury's negligent-misrepresentation finding and that negligent-misrepresentation damages were not recoverable based on the jury's finding that the value of the well before the incident was zero.[4] *See* Tex. R. App. P. 47.1. We also need not address Energico's first, third, and fourth issues in which it argues that its negligent-misrepresentation damages (1) were wrongfully reduced by the settlement credits, (2) failed to include the cost to re-drill the well,

---

[4]At oral argument, Cactus's appellate counsel contended that issue two was dispositive of its claims if found in Cactus's favor.

and (3) should not be reduced based on the jury's proportionate-responsibility findings.[5]  *See id.*

## III.  CACTUS'S COUNTERCLAIM

The jury was asked three questions regarding Cactus's breach-of-contract counterclaim:  (1) whether Energico failed to comply with its agreement to pay Cactus (the first question); (2) whether such failure to comply, if found, was excused (the second question); and (3) if the found failure to comply was not excused, what sum would "fairly and reasonably compensate Cactus" for its damages arising from the failure to comply (the third question).  In its second issue, Energico argues that the trial court erred by allowing Cactus to recover on its counterclaim for three reasons:  (1) Cactus's work on the well was "without value and worthless" and not performed in a good and workmanlike manner, which precludes any recovery by Cactus; (2) Energico is excused from its obligation to perform under the contract by Cactus's previous breach; and (3) Cactus failed to prove its invoices were reasonable and necessary.

We pause to note that Energico's appellate issue directed to Cactus's counterclaim is not clearly stated such that we can confidently determine on what exact basis Energico is attacking the judgment.  It frames its second issue in terms of legal impossibility—Cactus is "not entitled to payment on unpaid

---

[5]Additionally, it appears these arguments would be waived because Energico failed to raise them in a motion for new trial.  *See* Tex. R. Civ. P. 324(b)(4).

invoices" because its services rendered the well worthless and because the invoices were due after the well was damaged. Energico does not explicitly attack the supporting evidence (or lack thereof) or the trial court's entry of judgment in light of Energico's jury-charge objection and post-verdict motions. But because any judgment that fails to include a recovery on Cactus's counterclaim necessarily would have to disregard the jury's answers, we construe Energico's issue to be that the trial court erred to enter judgment on Cactus's counterclaim because the evidence was insufficient to support the jury's findings on the counterclaim. *See* Tex. R. App. P. 38.1(f), 38.9.

## A. EXCUSE

Energico's first two arguments in its appeal essentially are attacks on the sufficiency of the evidence to support the jury's no-excuse finding in the second question. After all, if Cactus's efforts were not sufficiently performed, were without value, or occurred before Energico's breach, Energico would be excused from performing under the contract. *See Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) ("A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform."); *Dowell, Inc. v. Cichowski*, 540 S.W.2d 342, 351 (Tex. Civ. App.—San Antonio 1976, no writ) ("[I]n an action for work and labor, it is a good defense that the work was done so badly as to be of no value or benefit to the person for whom it is done."); *cf. Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 852 (Tex. App.—

13

Dallas 2005, pet. denied) (holding prior material breach excusing performance is affirmative defense upon which defending party has the burden of proof).

To the extent Energico argues that the jury's no-excuse finding in the second question is against the great weight and preponderance of the evidence,[6] Energico has failed to preserve any error because it did not file a motion for new trial raising this issue. *See* Tex. R. Civ. P. 324(b)(3). To preserve any claim that the evidence was legally insufficient to support the jury's answer to the second question, Energico was required to raise the issue in a motion for instructed verdict, a motion for judgment notwithstanding the verdict, an objection to the submission of the question to the jury, a motion to disregard the jury's answer to a vital fact question, or a motion for new trial. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220–21 (Tex. 1992).

In its objections to the charge, Energico asserted that the third question, i.e., damages, should not have been submitted because Cactus failed to produce any evidence showing that the amounts not paid were reasonable and necessary. Energico again raised its argument regarding the third question in its motion for entry of judgment and in its response to Cactus's cross-motion for

---

[6]Because Energico had the burden of proof to support its affirmative defense of excuse, any factual-sufficiency challenge would be an argument that the finding was against the great weight and preponderance of the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *see also Trencor, Inc. v. Comech Mach. Co.*, 115 S.W.3d 145, 153 (Tex. App.—Fort Worth 2003, pet. denied) (holding excuse is affirmative defense under civil procedure rule 94).

14

take-nothing judgment, asserting that Cactus "should not be granted judgment on its counterclaim" because "there was no evidence admitted that such charges were reasonable and necessary." Energico additionally yet fleetingly asserted in its motion for entry of judgment and more fully in its response to Cactus's motion for judgment that Cactus "should not be granted judgment on its counterclaim" based on the jury's finding that Cactus breached its contract with Energico, which was not excused. The crux of this argument to the trial court, which was only elucidated in response to Cactus's motion for judgment, was that Energico's performance was excused as a matter of law because Cactus breached the contract first, as found by the jury in response to the questions regarding Energico's breach-of-contract claim. Energico never raised a specific postverdict challenge to the jury's answer to the second question regarding Cactus's counterclaim but instead argued that the jury's findings regarding Energico's breach-of-contract claim foreclosed any recovery by Cactus on its counterclaim.

Clearly, Energico did not preserve for our review its appellate argument that the trial court erred to enter judgment on Cactus's counterclaim based on evidence that Cactus's work on the well was "without value and worthless" and not performed in a good and workmanlike manner.[7] This argument is raised for the first time on appeal and cannot be grounds to reverse the judgment.

_____

[7]Energico, citing appellate rule of procedure 38.1(f), asserts that it preserved this argument because it is a subsidiary argument that was fairly included in its trial-court argument. But rule 38.1(f) directs that we are to consider subsidiary questions fairly included in an appellate argument, not a trial-

15

Energico also did not preserve its appellate argument that the jury's finding on the second question must be disregarded because it conclusively established that its performance was excused. Energico did not move for a directed verdict, object to the submission of the second question on Cactus's counterclaim, move for judgment notwithstanding the jury's finding on the second question, move to disregard the jury's finding on the second question, or file a motion for new trial. As such, Energico's arguments directed to the jury's answer to the second question on Cactus's counterclaim are not preserved.[8] To the extent Energico is attempting to complain that the jury's answer to the second question regarding Cactus's counterclaim conflicted with the jury's finding that Cactus breached the contract, Energico failed to preserve any error because it did not object to the conflict before the jury was discharged. *Kitchen v. Frusher*, 181 S.W.3d 467, 473 (Tex. App.—Fort Worth 2005, no pet.) (op. on reh'g).

---

court objection. *See* Tex. R. App. P. 38.1(f). This briefing rule cannot be read to expand the preservation-of-error rules applicable to our review of the sufficiency of the evidence to support a jury's finding. *Compare* Tex. R. App. P. 33.1(a)(1)(A), *with* Tex. R. App. P. 38.1(f), 38.9.

[8]Even if this argument were preserved, we could not conclude that Energico conclusively established that its performance was excused. Energico elected to recover on the jury's negligent-misrepresentation findings; thus, Energico's reliance on the jury's finding that Cactus breached the contract as excusing Energico's performance as a matter of law is misplaced. *See generally Carrico*, 111 S.W.3d at 586 ("Generally, it is the obtaining of a judgment on one theory or state of facts that precludes the ability to pursue other inconsistent remedies.").

## B. REASONABLE AND NECESSARY

As we previously stated, Energico objected to the third question regarding Cactus's counterclaim on the basis that Cactus failed to proffer any evidence that Cactus's charges were reasonable and necessary. On appeal, Energico asserts that Cactus cannot recover the found damages on Cactus's counterclaim because the evidence was legally and factually insufficient to show that "such charges were reasonable and necessary"; thus, we must disregard the jury's finding as to the third question and render a take-nothing judgment on Cactus's counterclaim. By not filing a motion for new trial, Energico did not preserve its factual-insufficiency argument. *See* Tex. R. Civ. P. 324(b)(2). But Energico preserved its legal-sufficiency argument by objecting to the submission of the third question on this basis and by asserting on appeal that Cactus tendered no evidence that its charges were reasonable and necessary. *See Tex. Mut. Ins. Co. v. Morris*, 383 SW.3d 146, 149 n.2 (Tex. 2012).

Cactus argues that it was not required to prove that its charges were reasonable and necessary. One measurement of damages in a breach-of-contract case is just compensation for the loss or damage actually sustained. *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 888 (Tex. App.—Dallas 2004, pet. denied). In order to recover these damages, a party must present evidence to support their reasonableness, which is more than mere evidence of the amounts charged. *See McGinty v. Hennen*, 372 S.W.3d 625, 627–28 (Tex. 2012); *Dallas Ry. & Terminal Co. v. Gossett*, 294 S.W.2d 377, 377, 383 (Tex.

17

1956); *see also Six Flags Over Tex., Inc. v. Parker*, 759 S.W.2d 758, 760 (Tex. App.—Fort Worth 1988, no writ); *cf.* Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b) (West Supp. 2014) (providing affidavit attesting that amount charged was reasonable and necessary is sufficient evidence to support fact finding that amount charged was reasonable or service was necessary); *Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 762 (Tex. App.—Fort Worth 1998, no pet.) ("A party seeking recovery for the cost of repairs must prove their reasonable value."). Therefore, some evidence of reasonableness was required.

When a party attacks the legal sufficiency of the evidence of an adverse finding on an issue on which it did not have the burden of proof, it must show on appeal that no evidence supports the adverse finding. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999). We will sustain a legal-sufficiency challenge if the evidence offered to prove a vital fact equates to no more than a scintilla. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009).

The jury was asked to determine an amount that would "fairly and reasonably compensate Cactus for its damages, if any, that resulted from Energico's failure to comply." The trial court instructed the jury to consider "[t]he value of the services rendered by Cactus pursuant to the parties' agreement" in determining reasonable compensation for Cactus. Knight testified that after the incident, he received invoices totaling $215,830.57 from Cactus but that he did

not pay because he felt he did not owe Cactus "anything." Energico did not object to the admission of the invoices into evidence.

Further, Energico admitted Knight's affidavit into evidence at trial. Attached to his affidavit were several invoices "that provide a summary and itemized statements of the services and the charges for the services that various contractors, vendors, and the like, provided to Energico" at the site. Knight confirmed that as Energico's president, he was in charge of the records related to the well at the site. Knight averred in his affidavit that "the services provided, as set forth in the summary and invoices, were necessary, and the amounts charged for the services, as set forth in the summary and invoices, were reasonable, at the time and place that the services were provided." Included in Knight's attached invoices, which were kept by Energico in the regular course of business, were the invoices from Cactus that Cactus admitted at trial to support its claim for $215,830.57 in damages under its breach-of-contract counterclaim.

Knight's affidavit, which was uncontroverted and verified that Cactus's charges and services were reasonable and necessary, was "sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b); *see Hong v. Bennett*, 209 S.W.3d 795, 800 (Tex. App.—Fort Worth 2006, no pet.). Accordingly, there was more than a scintilla of evidence to support the jury's finding that Cactus's services were necessary and charges were reasonable. We overrule Energico's second issue.

19

## IV.  CONCLUSION

Energico established no independent injury separate from the injury arising from its breach-of-contract claim.  Thus, Energico could not recover for Cactus's breach of contract under its negligent-misrepresentation claim.  On the other hand, Cactus proffered legally sufficient evidence of the necessary nature and reasonable value of its services at the site.  Thus, we reverse the trial court's judgment, render a take-nothing judgment on Energico's claims, and render a judgment in favor of Cactus on its breach-of-contract counterclaim.  *See* Tex. R. App. P. 43.2(c), 43.3.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DELIVERED:  November 20, 2014